In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4484

JAMES L. NORTHCUTT and LEWIS SMITH,
on behalf of themselves and all others
similarly situated,

*Plaintiffs-Appellants*,

*v.*

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN,
GENERAL MOTORS CORPORATION,
and GENERAL MOTORS LIFE AND
DISABILITY BENEFIT PROGRAM,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 C 337—**Sarah Evans Barker**, *Judge*.

———————

ARGUED SEPTEMBER 7, 2006—DECIDED NOVEMBER 2, 2006

———————

Before RIPPLE, KANNE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. James Northcutt and Lewis Smith brought this action seeking pension plan benefits withheld from them by their employer, General Motors Corporation ("GM"). GM had suspended the payment of these

benefits and was treating the amount otherwise due to the plaintiffs each month as reimbursement for past disability and pension plan overpayments. Mr. Northcutt and Mr. Smith claim that § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, prohibits GM from invoking contractual remedies for reimbursement and instead requires GM to seek equitable relief before a court. The district court granted summary judgment for GM; it determined that § 502 did not preclude the enforcement of the recoupment provisions. We agree with the district court and therefore affirm its judgment.

## BACKGROUND

### 1.

In our de novo review of the district court's grant of summary judgment to GM, we must construe all facts in the light most favorable to the non-moving party. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). On the issues before us, there is no dispute as to the essential facts.

Mr. Northcutt and Mr. Smith were hourly employees of GM and, during their employment, were members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). The terms and conditions of their employment, including pension and disability benefits, were governed under the collective bargaining agreements between GM and the UAW. Under the terms of these agreements, both pension and disability benefit payments otherwise due to plan participants were to be reduced by an amount equivalent to the federal social security benefits to which the employee was entitled. The agreements further provided

that, if the employee received full employer-sponsored benefits, unreduced by any social security income, and if the employee later received a retroactive award of social security benefits, that award would be considered as having been received throughout the time period for which social security eligibility was established. The plan thus would be considered to have overpaid for that period.

In the event that a retroactive award of social security resulted in such an overpayment of plan benefits, the agreements further mandated that the employee reimburse the plan. The Supplemental Agreement covering the disability program specifically provided:

### Section 10. Recovery of Benefit Overpayments

If it is determined that any benefit(s) paid to an employe[e] under a General Motors benefit plan . . . should not have been paid or should have been paid in a lesser amount, written notice thereof shall be given to such employe[e] and the employe[e] shall repay the amount of the overpayment.

If the employe[e] fails to repay such amount of overpayment promptly, the Corporation, on behalf of the applicable benefit plan, shall arrange to recover the amount of such overpayment from any monies then payable, or which may become payable, to the employe[e] in the form of wages or benefits payable under a General Motors benefit plan (excluding the General Motors Hourly-Rate Employees Pension Plan) incorporated under the GM-UAW National Agreement or any Exhibits thereto.

R.33, Ex.C at 14.

The agreement covering the pension plan contained similar language requiring lump-sum repayment of over-

paid benefits and authorized a deduction from future monthly benefits "until the total amount suspended equals the overpayment." R.33, Ex.H at 31.

**2.**

On January 1, 1997, Mr. Northcutt retired from GM. Shortly before his retirement, he applied for monthly retirement benefits and an early retirement supplement through the employer-sponsored plan. In connection with his application, Mr. Northcutt signed an additional agreement regarding his benefits, which provided, in pertinent part:

> If I become eligible for a Social Security Disability Insurance Benefit or an unreduced Social Security benefit prior to attaining age 62, I immediately will furnish to the GM Pension Plan Administration Center evidence of the effective date of my entitlement to such benefit.
>
> . . . .
>
> Any overpayment of my GM pension benefits resulting from my receipt of such Social Security benefit must be refunded by me in a lump sum. Otherwise, my GM pension benefits will be suspended in accordance with Pension Plan provisions until the total amount suspended equals the total amount of the overpayment.

R.33, Ex.K.

In 1998, Mr. Northcutt was determined eligible for Social Security Disability Insurance Benefits ("SSDIB"). In 2002, he received a retroactive lump-sum social security award amounting to $32,175. GM contacted him in July 2003 and requested reimbursement; Mr. Northcutt did

not repay GM, claiming that his SSDIB award had been dissipated in its entirety by the time GM made its demand. GM then began to recoup the overpayment by suspending prospectively Mr. Northcutt's benefits.

**3.**

Mr. Smith took a disability leave of absence beginning in 1990. He began receiving full benefits under GM's disability plan, and later, under the pension plan. On April 3, 1991, Mr. Smith signed an additional Reimbursement Agreement with GM, acknowledging the provisions of the GM plan relating to other sources of disability income. Specifically, the Agreement acknowledged that: (1) benefits due under the plan would be reduced by other disability benefits; (2) retroactive awards of disability benefits would be treated as having been received throughout the period for which they were provided; (3) Mr. Smith was obligated to request SSDIB and to request reconsideration of any denial of such benefits; (4) any retroactive award of SSDIB would result in an overpayment of benefits under the GM plan, for which reimbursement would be due within thirty days; and (5) if reimbursement were not made, Mr. Smith authorized GM to make appropriate deductions from any future compensation or insurance benefits thereafter payable to him to accomplish repayment.

Mr. Smith was thereafter approved for SSDIB and received a lump-sum SSDIB award covering the period of February 1, 1990 through December 31, 1995. GM requested repayment of plan benefits overpaid by virtue of the retroactive award; Mr. Smith did not repay GM, and claimed, as Mr. Northcutt had, that the retroactive award had been dissipated by the time that GM made its

demand. GM also began to recoup the overpayment by suspending prospectively Mr. Smith's benefits.

**4.**

On February 18, 2004, Mr. Northcutt and Mr. Smith brought this action under § 502(a)(1)(B) of ERISA in the United States District Court for the Southern District of Indiana. They sued the defendants GM, the GM Disability Plan and the GM Hourly-Rate Employees Pension Plan, on behalf of themselves and all similarly situated GM plan beneficiaries. Mr. Northcutt and Mr. Smith alleged that GM's contractually based reimbursement provisions contravened the statutory structure and policies of ERISA, and sought recovery of benefits due to them under the plan.[1]

The plaintiffs and GM filed cross-motions for summary judgment. In ruling on the motions, the district court found no material facts in dispute and consequently addressed the interpretation of ERISA. The plaintiffs contended that § 502 of ERISA, 29 U.S.C. § 1132, establishes a single, comprehensive remedial scheme by which the plans may recover earlier payments to beneficiaries. They further submitted that, under the Supreme Court's decision in *Great-West Life & Annuity Insurance v. Knudson*, 534 U.S. 204 (2002), § 502 provides the *only* mechanism through which ERISA-covered entities may obtain reim-

---

[1] Class certification proceedings were stayed pending potential resolution of the issues on summary judgment. The parties do not contest the decision of the district court not to certify the class at this point in the litigation and we therefore have no occasion to examine that issue.

bursement from plan participants for violations of plan provisions. More specifically, in the plaintiffs' view, because § 502 speaks exclusively to civil actions, plan fiduciaries are limited to seeking reimbursement through a civil action authorized by that statute's terms. Additionally, they maintained that *Great-West* limited remedies for fiduciaries, who are covered by the limitations of § 502(a)(3), to those traditionally available at equity. Accordingly, the plaintiffs contended that GM's contractual reimbursement mechanism, providing for recoupment of unreimbursed overpayments by withholding of future benefit payments, evades the remedial restrictions of § 502(a)(3); it is the equivalent to obtaining the "legal relief" not permitted under *Great-West*. In short, under the plaintiffs' view, GM's action in reducing their benefits is a remedy not specifically authorized by the statute, and therefore must give way to the exclusive relief provisions contained in § 502.

The district court did not accept the plaintiffs' view of § 502, as interpreted by *Great-West*. The court held that § 502 does not foreclose enforcement of the recoupment provisions of the plan. Accordingly, it granted summary judgment to GM.

In reaching its decision, the court examined at length the decision of the Supreme Court in *Great-West* and concluded that it does not apply in a situation when a fiduciary recoups overpayments under a contractual provision without seeking judicial enforcement through a civil action. Nothing in *Great-West* suggests, held the district court, that a fiduciary may not alter contractually performance requirements in order to obtain reimbursement. Accordingly, the district court entered summary judgment for GM.

**DISCUSSION**

We review the district court's ruling on summary judgment de novo. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Eastman Kodak Co. v. Image Technical Servs. Inc.*, 504 U.S. 451, 456 (1992)). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**1.**

Before us, the plaintiffs renew the contention that they presented to the district court.[2] Their claim is essentially a

---

[2] Although Mr. Northcutt and Mr. Smith advance a novel theory in support of their argument, challenges to the enforceability of similar reimbursement provisions are not new. Before other courts, these challenges generally have focused on whether such reimbursement structures might violate particular provisions of ERISA. In these other suits, the plaintiffs have contended that contractually based recoupment amounts to a breach of fiduciary duty by the plan or to a violation of ERISA's anti-assignment provisions. The district courts appear to have rejected each theory and approved, either explicitly or implicitly, of contractually based recoupment. *See, e.g.*, *Bush v. Metropolitan Life Ins. Co.*, 656 F.2d 231, 232 (6th Cir. 1981) (affirming the opinion of the district court, which noted that although the contract as written provided a windfall to a beneficiary receiving delayed SSDIB, the plan "could have protected itself by explicitly adding a recoupment provision [that deducted reimbursed costs over several months] to the contract to cover such circumstances"); *Calloway v. Pac. Gas & Elec. Co.*, 800 F. Supp. 1444 (E.D. Tex. 1992) (determining that

(continued...)

matter of statutory construction; accordingly, we must begin our inquiry with the language of the statute. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished.").

Section 502 of ERISA provides, in pertinent part:

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section [relating to a plan administrator's duty to disclose information], or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . .

---

[2] (...continued)
the correct legal interpretation of a particular plan contract permitted such recoupment and therefore plaintiff beneficiaries were entitled to no relief under § 502); *Stuart v. Metropolitan Life Ins. Co.*, 664 F. Supp. 619 (D. Me. 1987) (*aff'd*, 849 F.2d 1534 (1st Cir. 1988) (per curiam)) (determining that similar recoupment arrangement is neither a breach of fiduciary duties nor a breach of the anti-assignment provisions of ERISA, and that it applies to retroactive payments of SSDIB benefits even though its language does not include the term "retroactive").

(3) by a participant, beneficiary, or fiduciary

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

> (B) to obtain other appropriate equitable relief

>> (i) to redress such violations or

>> (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

29 U.S.C. § 1132(a). In construing this section, we must remember, of course, that ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993) (internal quotation marks and citation omitted).

Section 502(a) speaks only to the availability of "a civil action." Its structure is uncomplicated: Each subsection identifies explicitly the ERISA entities that may enforce rights under the statute in a civil action, what sort of rights are enforceable by each party and what relief may be sought. These provisions reveal a congressional intent to circumscribe carefully the remedies available to each entity, including plan fiduciaries. Notably, plan fiduciaries are limited to obtaining equitable relief; plan participants and beneficiaries may, by contrast, seek a broader panoply of remedies. Notably, the statutory language, although precise in defining *judicial* remedies, simply does not address the possibility of a recoupment device to recapture overpayments by the plan.

**2.**

The decisions of the Supreme Court interpreting ERISA lend no support to the view that Congress' fine-tuning of the *judicial* remedies available to various ERISA entities was intended to preclude extra-judicial contractual remedies such as the one at issue here.

The decisions of the Court repeatedly have noted the exclusivity of the judicial remedies that the ERISA enforcement scheme provides and have cautioned that we ought to be "reluctant to tamper with an enforcement scheme crafted with such evident care." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985); *see also Mertens*, 508 U.S. at 254. Taking into account the "integrated scheme of procedures for enforcement," *Russell*, 473 U.S. at 147, and acknowledging ERISA's preemption provisions,[3] the Court has repeatedly declined to view the statute as permitting judicial remedies not specifically authorized by the language of the statute. *Great-West Life & Annuity Ins.*, 534 U.S. at 209-10, 221 (refusing to allow a plaintiff plan to characterize its request to impose personal liability for a contractual obligation to pay money as "equitable relief" permitted by the statute); *Mertens*, 504 U.S. at 255-58 (denying beneficiaries' request that a plan be made whole by a non-fiduciary as essentially seeking compensatory damages not permitted by the statute); *Russell*, 473 U.S. at 147-48 (holding that the statute did not provide, and refusing to imply, a cause of action for a beneficiary's claim for extra-contractual damages caused by improper processing of benefits).

---

[3] *See* ERISA § 514, 29 U.S.C. § 1144; *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 140 (1990) (holding Texas cause of action that made "specific reference to, and indeed [was] premised on, the existence of a pension plan," preempted by § 514).

The plaintiffs submit that an unstated premise of Congress' carefully crafted judicial remedial scheme is the principle that no ERISA-covered entity can seek to enforce plan provisions *by any means* other than the judicial tools specifically authorized by the statute. More specifically, the plaintiffs ask us to rule that plan provisions authorizing recoupment of unreimbursed overpayments by a plan fiduciary are contrary to the statutory structure and the underlying policies of ERISA. Consequently, they contend, because GM could not maintain an action under § 502 to recoup the excess payments made before the social security payments were made on a retroactive basis, its action in recovering those payments by suspending prospectively payments constitutes a wrongful denial of benefits to Mr. Northcutt and Mr. Smith.

Mr. Northcutt and Mr. Smith believe that *Great-West* holds that *any* "procedure or relief claiming its authority from outside of the civil enforcement scheme [of § 502] is contrary to the policies and statutory scheme of ERISA." Reply Br. at 8. We cannot accept this view. It reads *Great-West,* and indeed the whole of the Supreme Court's ERISA enforcement precedent, far too expansively. These cases have had a much more specific focus. Notably, in each of the ERISA cases in which the Supreme Court has read § 502 as barring a particular remedy, an ERISA-covered entity has sought *judicial* relief beyond that specifically authorized by the statute; the Court has been asked repeatedly to address the viability of some form of *judicial action* for relief outside the statutory terms.[4] These decisions simply do not address

---

[4] *See, e.g., Massachusetts Life Ins. Co. v. Russell*, 473 U.S. 134 (1984) (determining § 409(a) did not authorize a civil action by a

(continued...)

contractual reimbursement schemes such as the one at issue here. Indeed, the Court has held a reimbursement remedy unavailable in the ERISA context only when it was predicated on a state law civil action preempted under § 514,[5] or

---

[4]  (...continued)
beneficiary to recover extra-contractual damages, in light of the exclusivity of the statutory enforcement scheme in § 502); *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993) (assuming, *arguendo*, that the statute provided a cause of action by a beneficiary against a nonfiduciary, the make-whole relief sought was not "equitable relief" consistent with the limitations of § 502).

[5]  Section 514 of ERISA provides, in pertinent part:

**(a)  Supersedure; effective date**

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

. . . .

**(c)  Definitions**

For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

(continued...)

was necessarily excluded by the *express* limitations of § 502 concerning the type of relief available to the various ERISA covered entities.[6]

We cannot accept the argument that the contractual reimbursement arrangement at issue here is simply an elliptical arrangement to evade the strictures of § 502 and afford "legal relief" to GM that is not permitted by the statute. Nothing in *Great-West* or in the Supreme Court's more recent clarification of judicial remedies in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869 (2006), compels or even supports the conclusion that the contractual provision before us constitutes *judicial* relief.[7] Here, the plaintiffs and GM have ongoing performance obligations under the contract. GM simply conformed its future performance with the language of the contracts permitting suspension of benefits. GM has taken benefits otherwise due to the plaintiffs, and applied them to the substantial debt that the plaintiffs owe the plan. This "relief" hardly constitutes, in the absence of any invocation of *any* judicial civil remedy, "legal relief" as that term is employed in § 502.

---

[5] (...continued)
29 U.S.C. § 1144. *See also Ingersoll-Rand*, 498 U.S. at 140 (finding a Texas civil cause of action, predicated on the existence of an ERISA plan, preempted by § 514).

[6] *See supra* note 4.

[7] The briefs in this case were filed before the Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869 (2006). We do not have, therefore, the benefit of the views of the parties on this significant clarification of the Court's views on § 502(a)(3). We leave for another day, therefore, the question of whether that case, far from forbidding the recoupment scheme at issue here, actually might support, at least indirectly, such a contractual self-help mechanism.

The plaintiffs' reading of § 502 overlooks, moreover, another great concern of the ERISA statute: to ensure the integrity of written plans, and to enforce them as written. *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 691-92 (7th Cir. 2003). Similarly, the plaintiffs' argument overlooks the important role that reimbursement of overpaid plan benefits plays in the continuing viability of plans for all other beneficiaries, an equally important ERISA goal. *See Ramsey v. Hercules*, 77 F.3d 199, 204 (7th Cir. 1996) (noting that "the primary goal of ERISA [is] to protect the interests of plan members and their beneficiaries").

## Conclusion

Mr. Northcutt and Mr. Smith present novel, but ultimately unpersuasive, structural and policy arguments. Section 502 speaks only to the availability of a civil judicial action. The present situation simply involves no civil action. GM modified performance of its current payment obligations in accordance with a contractual provision entitling it to do so; this modification does not violate any aspect of ERISA that the plaintiffs have identified, nor does it violate a clearly articulated policy of ERISA. Indeed, it fosters the integrity of a written plan and ensures the availability of funds for other participants. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*