In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2885

IN RE:

BARRY G. RADCLIFFE,

*Debtor-Appellee.*

APPEAL OF:

INTERNATIONAL PAINTERS AND ALLIED
TRADES INDUSTRY PENSION FUND

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 07 C 285—**Philip P. Simon,** *Judge.*

ARGUED FEBRUARY 13, 2009—DECIDED APRIL 23, 2009

Before KANNE, ROVNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* This is an appeal from an order of the district court, in turn affirming a judgment of the bankruptcy court in an adversary proceeding.

Barry G. Radcliffe owned a company called Glass Service, Inc. As part of a labor agreement the company contributed to the International Painters and Allied Trades Industry Pension Fund. When the company's payments became delinquent, Radcliffe signed a personal

guarantee to pay the contributions, but he failed to do so. The Fund sued for breach of contract and obtained a default judgment against him. He declared bankruptcy, but not before requesting his own pension benefits from the Fund. The Fund agreed that he was entitled to benefits but told him that it would withhold payment and apply the amounts withheld to his debt arising from the default judgment.

Radcliffe informed the Fund of his belief that the "setoff" violated the automatic stay that took effect when he filed for bankruptcy (*see* 11 U.S.C. § 362). The Fund, nevertheless, withheld payment. Radcliffe filed this adversary action to enforce the stay and he prevailed in the bankruptcy court. International was ordered to pay compensatory damages, interest, punitive damages, and attorney fees. In a decision with considerable flair,[1] the district court affirmed. We commend both the bankruptcy and the district courts for the clarity of their discussion of these issues. And we agree with them even though we are somewhat uneasy with the end result which gives a seemingly undeserved windfall to Mr. Radcliffe.

It is not hard to guess that this situation presents a thicket of legal issues in which, if one is not careful, it

---

[1] The district judge (the Honorable Philip P. Simon) set the stage in the first paragraph of his 28-page decision by noting (correctly, we think) that Radcliffe was a four-flusher who "didn't stand behind his personal guaranty and so he stiffed the fund."

would be possible to get hopelessly tangled. For that reason, we ignore side issues, such as standing (Radcliffe has standing) and mutuality (a concept thrown about but never really grounded in the case), and address what we see to be the dispositive issues before us.

The first issue is whether the setoff (or freeze on payments as the Fund terms it) violates the automatic stay under 11 U.S.C. § 362(a)(6). If it does, the second issue is whether the stay should have been lifted to allow the setoff. Involved in that issue is whether the setoff violates the anti-alienation provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1056(d)(1). If it does, there would be no reason to lift the stay. On then to the first issue.

Immediately upon the filing of a bankruptcy petition, § 362 of the bankruptcy code provides for an automatic stay of efforts outside the bankruptcy proceeding to collect debts from the bankrupt debtor. *Aiello v. Providian Fin. Corp.*, 239 F.3d 876 (7th Cir. 2001). Bringing all debts within the jurisdiction of the bankruptcy court allows for the orderly distribution of assets. *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505 (7th Cir. 1982). The stay prevents pre-petition creditors from taking any action to collect their debts. *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223 (7th Cir. 1990). But in cases where the stay will simply delay the inevitable—that is, the creditor will be allowed at some point to collect his debt— the bankruptcy code in § 362(d) permits relief from the automatic stay on "the request of a party in interest after notice and a hearing . . . ."

The district court found that the Fund's conduct violated the provision of the stay found in § 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement" of the case. The prohibition includes threats of immediate action by creditors. *Matter of Duke*, 79 F.3d 43 (7th Cir. 1996). What the Fund did here which, in the district court's view, violated the stay was to inform Radcliffe by letter that his "monthly pension benefits will be offset against [his] debt to the Pension Fund until such time as the judgment has been satisfied."

The Fund claims that the pension benefits were not property of the estate and therefore the offset was proper. It argues that the letter it sent to Radcliffe was not in violation of § 362(a)(6) because it was not coercive or harassing. Relying primarily on *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), the Fund says that nothing prohibits it from freezing payments until the validity of the offset is determined.

The situation here differs in at least two material respects from *Strumpf*. First, in *Strumpf* there was an undeniable right to a setoff. The bank had a right under Maryland law to set off a defaulted loan against Strumpf's checking account balance. The Court pointed out that, under section 553(a) of the bankruptcy code, "whatever right of setoff otherwise exists is preserved in bankruptcy." Here, as we shall soon see, there was no right to a setoff. Secondly, in *Strumpf*, even though, except for the stay, the bank had a clear right to a setoff, it merely placed an administrative hold on the checking account

until it could seek relief from the automatic stay, which it in fact sought five days later. The Court found that there was no violation of the stay because the action the bank took was not a setoff at all. The bank was holding the payment only for a brief period of time while it sought relief from the stay. It did not "purport permanently to reduce respondent's account balance by the amount of the defaulted loan."

In our case, the Fund did not move for relief from the stay until six months had passed. It had requested that the stay be modified in its answer to Radcliffe's complaint, but even this came two months after the Fund's letter to Radcliffe stating its intention to withhold payment and well after the first payment was, in fact, withheld. The bankruptcy court found that the Fund's request in its answer to the complaint was not sufficient to modify the stay, especially since no affirmation action was requested at the time regarding any right to a setoff. The bankruptcy court found even the ultimate motion for relief from the stay to be "woefully inadequate under the requirements of Fed.R.Bank.P. 9013," and it was filed only after the court required it. The Fund went far beyond placing a temporary hold on the benefits so that it could promptly seek relief from the stay. Rather, it refused to pay the pension and did nothing about the stay until urged to do so by the court. The Fund's comparison of its situation to *Strumpf* is way off the mark.

Furthermore, the Fund's letter to Radcliffe is in violation of § 362(a)(6). As the district court correctly noted,

the Fund held all the cards. Without seeking court approval, it simply made a unilateral decision not to pay the pension benefits. It informed Radcliffe that it did not need court approval because it did not believe the bankruptcy law applied to it. We discern no abuse of discretion in the decision that the Fund violated the automatic stay.

But because damages are only available for a willful violation, *see* section 362(h) of the code, the question remains as to whether the Fund acted willfully. We think it's clear that it did. A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding. *Price v. United States (In re Price)*, 42 F.3d 1068 (7th Cir. 1994). It is indisputable that the Fund acted with knowledge of the bankruptcy proceeding. Its letter to Radcliffe announcing that it would offset the debt against the pension payments explicitly stated, "We have received notice that you filed a Chapter 7 bankruptcy petition on October 13, 2005."

The next and more complex issue is whether the stay should have been lifted. Resolution of the issue takes us to ERISA's anti-alienation provisions. ERISA is, of course, designed among other things to safeguard employment benefits. *Boggs v. Boggs*, 520 U.S. 833 (1997). One of the ways it protects benefits is through an anti-alienation provision which states simply that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The

anti-alienation language removes Radcliffe's pension benefits from the bankruptcy estate. *See Patterson v. Shumate*, 504 U.S. 753 (1992); *In re Baker*, 114 F.3d 636 (7th Cir. 1997).

Despite this provision, there are certain exemptions from the ban on alienation. Section 1056(d)(4) says that the ban on alienation does not apply if

> (A) the order or requirement to pay arises—
>
>> (i) under a judgment of conviction for a crime involving such plan,
>>
>>     [or]
>>
>> (ii) under a civil judgment . . . entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle
>>
>>     . . . .
>>
>>     [and]
>
> (B) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the plan against the participant's benefits provided under the plan . . . .

However, these exemptions do not apply to the Fund's actions. There is no criminal activity here, and the only civil judgment involves a straightforward breach of contract, not a breach of a fiduciary duty—i.e., a violation of part 4 of the subtitle.

Nevertheless, the Fund says it did not violate the anti-alienation provisions. First, citing *Coar v. Kazimir*, 990

F.2d 1413 (3rd Cir. 1993), it argues that the anti-alienation provisions apply only when a third party is involved, and there is no third party here. It is true that in *Coar* the court said "we read section 206(d)(1) and, by extension *Guidry* [*v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990)], as shielding only the beneficiaries' interest under the pension plan from third-party creditors." At 1420-21. However, the context of the statement is that *trustees* must "undo any harm they have done to the pension plan . . . ." At 1420. In other words, the court was considering the anti-alienation provisions in the context of fiduciaries. As we have said, there is no claim in the present case of any fiduciary duty.

In a similar vein, the Fund argues that our decision in *Northcutt v. General Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031 (7th Cir. 2006), allows a setoff for contractual remedies due a plan. The case is not on point. In *Northcutt* the plan was using the offset to recover overpayments to a beneficiary. The plan had originally paid disability benefits to the beneficiary, who then obtained social security disability benefits. The plan required that, in such a situation, the beneficiary repay the benefits the plan paid, which duplicate the social security benefits. The plan had the right to recover the overpayment by withholding future payments. Here, of course, because no payments were ever made to Radcliffe, there were no overpayments to recoup.

The Fund also cites a recent Supreme Court case—*Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 129 S. Ct. 865 (2009)—and claims it sup-

ports the offset. The Fund says that *Kennedy* "holds that the anti-alienation clause in ERISA is similar to a spendthrift clause in a traditional trust and looks to the common law of trusts to interpret the scope of the anti-alienation rule in ERISA in that context . . . ."

We are at a loss to know how the Fund thinks that *Kennedy* is helpful to its position. *Kennedy* involves a suit by the estate of a plan participant against the plan administrator seeking to recover benefits for the estate. The participant, whose wife was the beneficiary during their marriage, did not, upon their divorce, designate a new beneficiary for a savings and investment plan. The plan administrator paid the benefits to the then-ex-wife in accordance with designations of beneficiary. In the suit by the estate to claim the benefits, one of the issues was whether the divorce constituted a common law waiver of benefits. The Court found that the waiver was valid; that—as in the common law of spendthrift trusts—a beneficiary can waive her interest in the benefits. But the divorce decree was not a qualified domestic relations order (QDROs are given special consideration under the statute), and thus there was no designation of an alternate payee. The Court declined to say that a waiver—by itself without a designation of an alternate payee—forfeits a beneficial interest and sends it to the next in line (in that case, the estate). So the Court concluded that, while the ex-wife's waiver was valid, it did not carry the day for the estate: the fact that the waiver escaped "inevitable nullity under the express terms of the antialienation clause" did not control the decision. At 874. Despite the waiver, the plan admin-

istrator was required to do its "statutory ERISA duty" and pay the benefits to the ex-wife. As relevant to our case, the Court emphasized that plan administrators are obligated to act in accordance with plan documents when those documents are consistent with the statute. What the Court was after was simplicity in the administration of plans so that beneficiaries could "get what's coming quickly, without the folderol essential under less-certain rules." At 875-76 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990)). The point was to prevent plan administrators from having to examine a "multitude of external documents" before paying benefits. At 876.

In the present case, the Fund documents indicate that Radcliffe is the beneficiary. Under *Kennedy*, the administrator is obligated to pay the benefits in conformity with plan documents without resort to external documents, in this case a judgment on a contract which falls far short of establishing the right to a setoff, even if the added complication of bankruptcy were not involved. In short, the bankruptcy judge was well within his discretion in refusing to lift the stay. To act otherwise would have been an exercise in futility.

The Fund also disputes the bankruptcy court's calculation of compensatory damages for pre-petition pension benefits, the award of punitive damages, and the interest rate applied to the damage award.

The pre-petition pension payments made in September and October 2005, the Fund argues, would, if they had been paid, be property of the estate, and the debtor

cannot compel the Fund to make payments to him of property belonging to the estate. This strikes us as a stunningly bold argument coming from the entity which improperly failed to make the payments in the first place. And it is an argument we reject. The Fund relies on *Morlan v. Universal Guaranty Life Insurance Company*, 298 F.3d 609, 616 (7th Cir. 2002), and quotes as follows:  the bankruptcy filing "lost the [pre-petition] chunk of [plaintiff's] ERISA claim . . .; it fell into the estate in bankruptcy." (The Fund added the ellipsis and the brackets.) The Fund implies that *Morlan* says all pre-petition ERISA claims are part of a bankruptcy estate. There is no such implication in the case. The *Morlan* quotation without the ellipsis makes clear that what fell into the bankruptcy estate was the ERISA claim "that we are concerned with in this part of the opinion." That "part of the opinion" dealt with welfare benefits, not pension benefits. We said that some welfare benefits, *unlike pension benefits*, could be assignable to the bankruptcy estate. In the present case, of course, we are concerned only with pension benefits, not welfare benefits. The Fund's underhanded use of ellipsis to hide what the court was talking about, at best, undermines its argument; the Fund is not entitled to the line-item veto. Also, the Fund relies on *Kokoszka v. Belford*, 417 U.S. 642 (1974), for the proposition that a "right to a refund is therefore property of the estate." *Kokoszka*, however, dealt not with pension benefits, but with an income tax refund. Use of that case in this context is also disingenuous.

As to the interest rate applied and the award of punitive damages, we agree entirely with the district court.

Accordingly, the judgment of the district court is AFFIRMED.