In the

# United States Court of Appeals

### For the Seventh Circuit

—————————

No. 24-2021

IN RE: JACQUELINE M. STERLING,

*Debtor-Appellant.*

—————————

JACQUELINE M. STERLING,

*Plaintiff-Appellant,*

*v.*

SOUTHLAKE NAUTILUS HEALTH & RACQUET CLUB, INC.,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:23-cv-349 — **Phillip P. Simon**, *Judge.*

—————————

ARGUED JANUARY 22, 2025 — DECIDED JUNE 20, 2025

—————————

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Five hundred dollars in unpaid gym membership fees to Southlake Nautilus Health and Racquet Club—and a series of unfortunate intervening events— landed Jacqueline Sterling in jail for a weekend. After Sterling

failed to pay the membership fees, Southlake obtained a default judgment against her in a collection action in the Superior Court of Lake County, Indiana. Later, a bankruptcy court in the Northern District of Indiana discharged Sterling's debt to Southlake, but Southlake continued its efforts to enforce the judgment, in violation of the discharge order. Sterling, for her part, failed to notify the Lake County court of her bankruptcy, despite a local bankruptcy rule that requires such notice, or to appear at a hearing in the collection action. Unaware of the discharge order, the Lake County court issued a bench warrant for Sterling's arrest based on her failure to appear at the hearing. A year later, a police officer who stopped to help her fix a flat tire discovered the bench warrant.

In this civil contempt proceeding, the bankruptcy court found that Southlake's violation of the discharge order had contributed to Sterling's arrest and weekend in jail—and resulting lost wages and emotional distress. Likewise, the court found that Sterling had contributed by her fault to her injury. Based on these findings, and applying principles of comparative fault, the bankruptcy court allocated half the liability for Sterling's lost wages and emotional distress—as well as for the reasonable attorney's fees Sterling incurred in prosecuting the contempt proceeding—to each party.

But compensatory damages and attorney's fees are analytically distinct. A compensatory damages award in a civil contempt proceeding resembles a tort judgment for compensatory damages. Based on this analogy, we have held that a court typically must award compensatory damages as a civil contempt sanction if the complainant proves that the defendant's actions in violation of a court order caused her injury—that is, as in a tort action, a court has limited discretion to deny

relief. Likewise, Sterling concedes that the doctrine of comparative fault reduces a defendant's liability for the injury, and so the compensatory damages award, if the defendant proves that the complainant's blameworthy conduct contributed to her injury—that is, tort principles also limit a court's discretion to grant relief. These limits on a court's discretion distinguish an award of compensatory damages in a civil contempt proceeding from traditional equitable relief.

By contrast, a court has broad discretion to shift attorney's fees as a contempt sanction. When a court shifts fees pursuant to civil procedures, the court can shift only those fees incurred because of the contemptuous conduct. Otherwise, the court has broad discretion to grant or deny relief—including, we conclude, the discretion to hold the defendant fully liable for the attorney's fees the complainant incurred, regardless of whether she contributed to her injury. Accordingly, the bankruptcy court had the discretion to hold Southlake fully liable for the reasonable attorney's fees Sterling incurred.

The bankruptcy court appeared not to recognize that different principles apply to compensatory damages and attorney's fee awards, so its finding that Sterling contributed by her fault to her arrest and weekend in jail did not require it to apportion liability for the attorney's fees. We thus vacate the judgment of the district court in part and remand to the bankruptcy court for it to decide, in light of its broad fee-shifting discretion, whether to reduce Southlake's liability for the attorney's fees Sterling incurred based on her failure to notify the Lake County court of her bankruptcy.

Neither the bankruptcy court's opinion nor the judgment order mentioned costs. We interpret this silence as allowing

costs, and we leave it to the bankruptcy court on remand to
set the deadline for Sterling to file a bill of costs.

## I. Background

In March 2011, a flat tire stopped Sterling as she was driv-
ing. A police officer pulled over to assist her, then arrested her
and took her to jail after he discovered a bench warrant for
her arrest. She spent a Friday night to Sunday in jail. As a re-
sult, Sterling missed four shifts at her job as a poker dealer at
Horseshoe Casino in Hammond, Indiana.

Her arrest and weekend in jail related to a proceeding ini-
tiated by Southlake in the Superior Court of Lake County, In-
diana, to collect on $518 in unpaid gym membership fees. In
February 2002, Southlake obtained a default judgment against
Sterling for $957 (the unpaid gym membership fees plus in-
terest), and in December 2009, Southlake filed a motion for
"proceedings supplemental" to enforce the judgment. The
Lake County court held a hearing on the motion in April 2010,
but Sterling failed to appear, so the court issued a bench war-
rant authorizing her arrest—the bench warrant the police of-
ficer discovered when he stopped to help her fix her tire.

The wrinkle central to this case is that a bankruptcy court
discharged Sterling's debt to Southlake in January 2010, be-
fore the Lake County court issued the bench warrant. Sterling
filed for bankruptcy in the United States Bankruptcy Court
for the Northern District of Indiana in September 2009. She
listed Southlake as a creditor, so the Bankruptcy Noticing
Center sent notice to Southlake of the bankruptcy and the Jan-
uary 2010 discharge order. But Southlake did not forward
these notices to its outside attorneys, who continued to pur-
sue Sterling's debt to Southlake. And Sterling failed to give

notice of the bankruptcy to the Lake County court, in contravention of a local bankruptcy rule. *See* N.D. Ind. L.R. B-4002-1(a)(2) (requiring a debtor to "give written notice of the bankruptcy to any court or tribunal where an action or other proceeding is being maintained against the debtor").

After her release from jail, Sterling filed a complaint in the bankruptcy court, asking the court to hold Southlake in civil contempt for violating the discharge order. *See* 11 U.S.C. § 524. After a bench trial, the bankruptcy court ruled in favor of Southlake, and the district court affirmed. In an appeal from that decision, however, we concluded that Southlake had acted in civil contempt when its attorneys pursued Sterling's debt in violation of the discharge order, and we remanded the case to the bankruptcy court for further proceedings. *In re Sterling*, 933 F.3d 828, 832–36 (7th Cir. 2019).

On remand, the bankruptcy court found $18,000 in emotional distress ($6,000 for each day in jail) and $1,449 in lost wages from Sterling's arrest and incarceration. The court dismissed Sterling's evidence of loss of reputation—she has had to disclose her arrest to an employer and to state gaming commissions through the gaming licensure process—as insufficient, given that she has neither lost a job nor her gaming license because of these disclosures. In addition, the court denied her request for "false arrest" damages, reasoning that the bench warrant provided probable cause for her arrest.

The bankruptcy court further found that both Southlake's and Sterling's blameworthy conduct had contributed to cause Sterling's arrest and weekend in jail: Southlake's in prosecuting the collection action in violation of the discharge order, and Sterling's in failing to comply with Northern District of Indiana Local Bankruptcy Rule B-4002-1(a)(2). The court

reasoned that if Sterling had notified the Lake County court of her bankruptcy, as required by the rule, "this entire unfortunate occurrence may have been avoided," and "there is a chance that much of the litigation could have been avoided." On this basis, the court allocated liability for the damage equally between Southlake and Sterling. In the end, the court awarded Sterling $9,724.50 in compensatory damages, representing Southlake's share of liability for the emotional distress and lost wages from her arrest and confinement.

Sterling also sought recovery for attorney's fees. The bankruptcy court found $198,710 in reasonable attorney's fees. But the court apportioned liability for fees according to the same formula it used to apportion liability for damages, so the court awarded Sterling only $99,355 in attorney's fees.

Neither the bankruptcy court's opinion nor the document setting forth the judgment mentioned costs.

Sterling appealed this sanctions decision, first to the district court, which affirmed, and then to this court.

## II. Discussion

This appeal concerns the bankruptcy court's imposition of civil contempt sanctions. *See Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). We review a sanctions decision for an abuse of discretion. *See Evans v. Griffin*, 932 F.3d 1043, 1045 (7th Cir. 2019). Applying this standard, we reverse only if the court premised its decision on an incorrect legal principle or a clearly erroneous factual finding, or reached an unreasonable result. *See In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000).

Under the Bankruptcy Code, a discharge order "operates as an injunction against the commencement or continuation

of an action, the employment of process, or an act, to collect, recover or offset" a discharged debt. 11 U.S.C. § 524(a)(2). Another provision permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a). These statutory provisions "bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). "That 'old soil' includes the 'potent weapon' of civil contempt," *id*. at 560 (quoting *Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)), and the traditional principles of equity practice that govern civil contempt, *id*. at 561.

Based on these traditional principles of equity practice, "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id*. at 565.[1] If a court finds this standard met, the court must then decide what civil contempt sanctions, if any, to impose, which is the decision at issue in this appeal. Here, we review the following components of the bankruptcy court's sanctions decision: compensatory damages, then attorney's fees, then costs.

---

[1] In our prior opinion in this case, we applied a different standard: A standard akin to strict liability, which is the standard we have held applies to remedy violations of automatic stays. *Sterling*, 933 F.3d at 832 & n.3 (relying on *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009)). In *Taggart*, however, the Supreme Court distinguished discharge orders from automatic stays based on differences in statutory language and purpose. 587 U.S. at 564–65. In the discharge context, courts should rely on principles of equity practice that govern civil contempt. We do so here.

### A. Compensatory Damages

"[C]ourts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Id.* at 560 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). Compensatory sanctions may include a fine payable to the complainant. *See id.*; *Connolly v. J.T. Ventures*, 851 F.2d 930, 932–34 (7th Cir. 1988).

Such a sanction resembles a tort judgment for compensatory damages caused by wrongful conduct, and courts including our own have drawn from tort law to define the relevant principles. "Much like [in] a tort action, the complainant must prove that the defendant's actions in violation of the court order caused her injury." *Thompson v. Cleland*, 782 F.2d 719, 722 (7th Cir. 1986). If she makes this showing, "compensatory damages are typically required," meaning the court typically must impose a compensatory contempt fine. *NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1057 (7th Cir. 2023); *see also In re Fed. Facilities Realty Tr.*, 227 F.2d 657, 658 (7th Cir. 1955) ("The rule to be spelled out from the court decisions is that a party compelled to resort to a civil contempt proceeding to preserve and enforce an adjudicated right is entitled to a decree by way of a fine for injuries actually sustained by him because of the contemptuous act…."). A court's lack of discretion in this context distinguishes a compensatory contempt fine from traditional equitable relief. *See* Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies* § 1.2, at 9 (3d ed. 2018) (distinguishing legal and equitable relief based on "the tradition that equitable relief is discretionary," whereas legal relief follows "as a matter

of course when the right [is] established"). The complainant, of course, must still prove her damages.

In this case, the bankruptcy court implicitly applied the doctrine of pure comparative fault when it allocated liability for the harm from Sterling's arrest and weekend in jail. In a tort action, when the plaintiff and the defendant both contributed by their fault to cause the injury, the doctrine of pure comparative fault allocates liability for the injury among the parties according to the comparative degree of their fault. *See* Dobbs & Roberts, *supra*, § 8.5, at 707–08; *see, e.g., City of Chicago v. M/V Morgan*, 375 F.3d 563, 578–79 (7th Cir. 2004) (holding that the district court properly reduced the defendant's liability for damages by half based on the plaintiff's failure to replace a fender protecting electric cables in an admiralty case involving a tugboat that struck a bridge, severing the cables, where pure comparative fault applies in admiralty actions). Likewise, the bankruptcy court found Sterling and Southlake equally responsible for Sterling's injury, so the court allocated half the liability for the injury to Southlake.

Sterling does not dispute that pure comparative fault applies in a civil contempt proceeding when the complainant seeks compensation for harm from the defendant's violation of a court order. Rather, she argues that the bankruptcy court misapplied this doctrine by assigning her, not Southlake, the burden of proving that her failure to notify the Lake County court of her bankruptcy contributed to her injury. Under the doctrine of comparative fault, while the plaintiff has the burden of proving her injury, the defendant usually has the burden of proving that the plaintiff contributed by her fault to her injury. *See* Dobbs & Roberts, *supra*, § 3.9, at 274.

We reject the premise of Sterling's argument. Based on the evidence presented, the bankruptcy court found that "if Sterling had complied with the Local Rule B-4002-1(a), the state court judge likely would have reviewed the court's file prior to issuing any bench warrant, acknowledged any bankruptcy notice, and, as a result, would not have issued a bench warrant in the collection case against Sterling." That is, the bankruptcy court assigned the burden of proof to Southlake—and found that Southlake had carried its burden.

We next turn to the measure of damages. By analogy to defamation *per se*, Sterling argues that she was entitled to presumed damages for loss of reputation because her arrest record imputes criminal conduct. She also defends her analogy to false arrest, which the bankruptcy court rejected.

Under the common law of defamation, categories of communications deemed virtually certain to cause serious injury to reputation—including those that impute certain criminal conduct—qualify as defamatory *per se*. Restatement (Second) of Torts §§ 569–71 (Am. L. Inst. 1965); *Carey v. Piphus*, 435 U.S. 247, 262 (1978). In an action for the publication of a communication that falls within one of these *per se* categories, the plaintiff can recover "purportedly compensatory damages without evidence of actual loss," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974), as a substitute for ordinary compensatory damages, *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 311 (1986). *See also* Dobbs & Roberts, *supra*, § 7.1(2), at 640–41 (describing the doctrine's compensatory purpose).

Perhaps the doctrine of presumed damages should apply in a contempt proceeding when the complainant proves that the defendant's contempt caused a communication that imputes criminal conduct of the type that can support an action

for defamation *per se*. Sterling, however, has failed to show that Southlake's conduct caused such a communication. She offers only the conclusory statement that her arrest record imputes criminal conduct. But she was arrested for failure to appear in the Lake County collection action. Failure to appear in a civil proceeding is not a criminal offense defined by Indiana's legislature. *See* Ind. Code § 35-44.1-2-9 (providing that a person on release *after a charge of a crime* who intentionally fails to appear commits a misdemeanor or felony). Even if this conduct is criminal under some other definition, Sterling has not shown that its imputation can support an action for defamation *per se*. To do so, the criminal conduct imputed must be "of a character such as to harm the reputation of the person charged with it in the eyes of a substantial minority of respectable persons," and violations of many traffic and municipal ordinances do not meet this standard. Restatement (Second) of Torts § 569 cmt. d. We are doubtful that failure to appear does either. Thus, Sterling's analogy to defamation *per se* falls apart, and the bankruptcy court properly required her to provide some evidence of actual loss of reputation.

Sterling's analogy to false arrest fares better. Like a victim of false arrest or the related tort of false imprisonment, *see* Restatement (Second) of Torts §§ 35, 41, Sterling experienced a restraint of her freedom through her arrest and weekend in jail. In an action for false arrest or false imprisonment, a plaintiff can recover compensation for tangible injuries, such as lost wages, and intangible injuries, such as emotional distress, loss of time, humiliation, and the like. *See* Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, *Dobbs' Law of Torts* § 47 (2d ed. April 2025 update). By analogy, Sterling can recover compensation for the same injuries from Southlake.

But the bankruptcy court's rejection of Sterling's analogy to false arrest had no discernable effect on its award. The court awarded Sterling compensatory damages for lost wages and emotional distress, and she has not identified any other injuries from her arrest and weekend in jail (setting aside loss of reputation). We thus see no reason for the bankruptcy court to revisit its compensatory damages award.

**B. Attorney's Fees**

Independent of any compensatory damages award, a court may order the defendant to reimburse the complainant for the reasonable attorney's fees she "incurred in bringing the violation to the court's attention." *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981); *see also Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001) (recognizing that the victim of a discharge order violation can recover reasonable attorney's fees in a civil contempt proceeding "to enable so small a claim to be litigated"). This exception to the American rule against fee shifting derives from "the discretion of the court whose dignity has been offended and whose process has been obstructed," *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428 (1923), to determine a contempt sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). But the sanction must be compensatory in nature when imposed pursuant to civil procedures, as here. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–30 (1994).

For the sanction to count as compensatory, the court can shift only those attorney's fees incurred because of the contemptuous act; it cannot assess an additional amount as punishment. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). Otherwise, the court has broad discretion to grant or deny relief. *See Neises*, 62 F.4th at 1057; *Tranzact Techs., Inc.*

*v. 1Source Worldsite*, 406 F.3d 851 (7th Cir. 2005); *Premex*, 655 F.2d at 785; *Fed. Facilities*, 227 F.2d at 658.

This broad discretion distinguishes a fee shifting decision from a decision to award compensatory damages in a civil contempt proceeding. *See Fed. Facilities*, 227 F.2d at 658; *see also Donovan v. Burlington N., Inc.*, 781 F.2d 680, 682–83 (9th Cir. 1986). As explained above, a compensatory damages award in a civil contempt proceeding resembles a tort judgment for compensatory damages, and tort principles may apply. In this case, Sterling concedes that the doctrine of pure comparative fault applies in a contempt proceeding, like in a tort action, when the complainant seeks compensation for an injury caused partly by her own blameworthy conduct. But even if the bankruptcy court was required to apportion liability for Sterling's lost wages and emotional distress according to the comparative degree of Southlake's and Sterling's fault for her injury, the same is not true, we conclude, for assessing the attorney's fees Sterling incurred in prosecuting the contempt proceeding. Instead, the court has broad discretion.

The bankruptcy court, however, appeared not to recognize its broad discretion and instead felt bound by the same comparative fault principles it applied to the award of compensatory damages. Accordingly, without any apparent independent assessment, the bankruptcy court applied the doctrine of pure comparative fault to reduce its award of attorney's fees. Because this decision was apparently based on the erroneous view that the same principles apply to compensatory damages and attorney's fee awards, the decision was an abuse of discretion. We thus vacate the judgment of the district court with respect to attorney's fees and remand for the bankruptcy court to determine, in light of its broad fee-

shifting discretion, whether to reduce Southlake's liability for the attorney's fees—and if so, by how much.

**C. Costs**

Finally, Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." This rule codified the practice of American courts in equity proceedings prior to the federal rules: As a matter of discretion, courts allowed limited reimbursement for expenses such as court fees and witness fees (but not attorney's fees, in a departure from the English practice, hence the "American rule" mentioned above). *See* 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2665–66 (4th ed. May 2025 update); 28 U.S.C. § 1920 (specifying taxable costs). A court has discretion to disallow costs. Given the presumption in favor of allowing costs, however, "the penalty of denial or apportionment of costs under Rule 54(d) should [generally] be imposed only for acts or omissions on the part of the prevailing party in the actual course of the litigation…." *Chi. Sugar Co. v. Am. Sugar Refin. Co.*, 176 F.2d 1, 11 (7th Cir. 1949).

Neither the bankruptcy court's opinion nor the judgment order mentioned costs. Sterling interprets this silence as a decision to disallow costs, and she challenges this aspect of the bankruptcy court's sanctions decision.

If the bankruptcy court had disallowed costs, this might run afoul of *Chicago Sugar*. Sterling, however, misinterprets the opinion and judgment order's silence about costs. We have held that "a judgment silent about costs is one 'allowing

costs.'" *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988).

Given Sterling's misinterpretation, she has yet to file a bill of costs. This context raises a final question: Has the time to file a bill of costs expired? We have held that "where no local rule sets a time limit for filing a bill of costs, [Federal Rule of Civil Procedure] 54(d)—which does not include any specific time limit—allows a prevailing party to wait until after appeal to file its bill." *Id.* at 221. In this bankruptcy case, Federal Rule of Bankruptcy Procedure 7054(b)(1) applies. Like Rule 54(d), Rule 7054(b)(1) does not include any specific time limit for filing a bill of costs. Nor do the local bankruptcy rules in the Northern District of Indiana. We therefore conclude that the time to file of a bill of costs has not expired, and we leave it to the bankruptcy court to set a deadline for Sterling to file a bill of costs on remand, then for it to assess costs.

*          *          *

For the foregoing reasons, we AFFIRM in part and VACATE in part the judgment of the district court and REMAND to the bankruptcy court for further proceedings.

ROVNER, *Circuit Judge,* concurring. I join the court's opinion in full. I write separately on the matter of attorney's fees to explain why, in my view, there should be no presumption that the award of fees to Sterling should be reduced to reflect her degree of fault for the injuries she suffered as a result of Southlake's violation of the discharge injunction.

The court has directed the bankruptcy court to engage in de novo reconsideration of the appropriate fee award, independent of the fault allocation as to Sterling's injuries and the corresponding reduction of her compensation for those injuries. That will require the bankruptcy court to consider, among other factors, the distinct purposes of fee-shifting and compensating Sterling for her injuries, and to consider whether and why it might be appropriate to deny Sterling full recompense for the attorney time necessary to obtain the judgment finding Southlake liable for civil contempt and awarding her appropriate compensation.

Certainly there may be cases in which a party's share of fault for the contempt injury will argue in favor of a reduced fee award. I can imagine a case, for example, in which a party has been found partially or primarily responsible for his contempt injury as the result of his own grossly negligent or reckless behavior. In such a case, it might make good sense to reduce not only the award of compensatory damages but also the fee award, as a way of acknowledging the equities of the situation.

But this is a case in which both parties were equally guilty of ordinary negligence in the failure to give requisite notice (in Sterling's case, notice to the state court of the bankruptcy filing, and in Southlake's case, notice to its attorneys of the bankruptcy discharge). Thus the bankruptcy court's 50-50

allocation of fault between the parties for Sterling's underlying injuries.

This is not a case, I should add, in which either Sterling or her counsel were guilty of some fault or omission in pursuing the contempt claim that raised ethical concerns, delayed or hampered the resolution of the claim, or multiplied the proceedings. It is *that* sort of misconduct that occurred in the cases that Southlake has cited to us in its appellate brief. Southlake Br. 24; *see In re Rodriguez*, 2020 WL 1672773, at *4 (9th Cir. B.A.P. April 2, 2020) (debtor's failure, before filing contempt motion, to reach out to creditor who levied debtor's bank accounts for $236.41 in violation of automatic stay, to see if matter could be resolved without litigation); *McMullen v. Schultz*, 443 B.R. 236, 241, 243 (D. Mass. 2011) (attorney's multiple failures to comply with disclosure obligations imposed by Fed. R. Bankr. P. 2016(b)); *In re Haimil Realty Corp.*, 579 B.R. 19, 31–32 (Bankr. S.D.N.Y. 2017) (counsel's failure to apprise client of realistic outcomes as between litigating with the creditor or accepting a settlement offer); *In re Lamar*, 2013 WL 5726956, at *1 (Bankr. S.D. Ga. Oct. 21, 2013) (special counsel's delay in submitting an application to court to approve his employment).

Nor is this a case where one can parse a prevailing litigant's multiple claims, distinguish meritorious from unfounded or otherwise unsuccessful claims, and limit compensation to the former. There was one wrong done to Sterling and she had one (meritorious) claim for that transgression. And although the bankruptcy court ultimately found Sterling 50% at fault for her injuries, neither she nor her counsel could have known in advance what degree of fault the court would attribute to her, nor could they have feasibly reduced the

attorney time spent on the case in anticipation of that finding. Ultimately, the district court found that only a limited number of the attorney hours claimed should be excluded from the lodestar calculation because those hours related to a dismissed state-court proceeding, and there is no dispute here as to that excision. The remaining hours claimed were deemed appropriately claimed and were therefore included in the lodestar calculation; the resulting total is presumed to be an accurate calculation of the fees to which Sterling is entitled to recover. *See Murphy v. Smith*, 583 U.S. 220, 227 (2018) (the lodestar figure is presumed to be a reasonable calculation of the fees that the prevailing party is entitled to recover) (fees awarded pursuant to 42 U.S.C. § 1988); *Emerson v. Dart*, 900 F.3d 469, 473 (7th Cir. 2018) (same) (fees imposed as sanction under court's inherent disciplinary authority); *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 35–52 (7th Cir. 2018) (non-precedential decision) (same) (contempt-related fees).

As the bankruptcy court itself recognized, this was a relatively complex case. Although, in the abstract, the claim of civil contempt was arguably straightforward (apart, perhaps, from the allocation of fault as between Sterling and Southlake for her injuries), in practice it has taken over a decade of litigation, commencing with a two-day bench trial, followed by one round of appeals (first to the district court and then to this court) in order for Sterling to prevail on the finding of contempt, and now a second round of appeals up the ladder to this court in order for her to obtain reconsideration as to the award of attorney's fees. In no sense was this extended litigation the result of Sterling's comparative fault with respect to her underlying injuries—Sterling's omission to send notice to the state court of her pending bankruptcy, and the injuries she suffered when she was arrested, were complete well before

the litigation over Southlake's contempt began; there was nothing she could do to rectify her omission or mitigate her injuries after the fact.

Apart from the limited context of Sterling's fault, an additional factor that the bankruptcy court must have in mind when it reconsiders the fee award is the unique function such an award serves in enabling a plaintiff to vindicate her rights—here, Sterling's crucial right as an individual whose debt has been discharged in bankruptcy to be free from further efforts to collect on the debt. *See In re Castle Home Builders, Inc.*, 520 B.R. 98, 106 (Bankr. N.D. Ill. 2014) (noting that the bankruptcy discharge injunction is a critical element of the fresh start afforded to the debtor by the Bankruptcy Code, as is a creditor's respect for such an injunction). Such rights mean little if they can be ignored with impunity. But to enforce one's rights in court requires an attorney, and attorneys are expensive. Sterling suffered real injuries as a result of Southlake's violation of the discharge order: she was arrested and spent three days in jail, she missed her scheduled shifts at work and lost the wages she would have earned during those shifts, and going forward, she may have to disclose her arrest to prospective employers for the rest of her life. The damages awarded to Sterling to compensate her for those injuries were by no measure extravagant (even before being halved to reflect her comparative fault). But the modest victory she achieved demanded a significant expenditure of attorney time nonetheless. Only if the fee award reflects the reality of what it took to achieve the judgment in Sterling's favor can it be said that her rights as a debtor have been fully vindicated. *Cf.* Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94-559, S. Report No. 94-1011, at 2 (1976) ("If private citizens are to be able to assert their civil rights, and if those who

violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."); *see also In re Fed. Facilities Realty Tr.*, 227 F.2d 657, 658 (7th Cir. 1955) (compensation for a party compelled to resort to civil contempt to preserve and enforce an adjudicated right may include the party's attorney's fees); *N.L.R.B. v. Neises Constr. Corp.*, 62 F.4th 1040, 1057–58 (7th Cir. 2023) (awarding fees as a component of sanctions for a party's civil contempt).

Like my colleagues, I recognize the bankruptcy court's broad discretion in arriving at a reasonable award of attorney's fees. The court's task is arguably less straightforward than it otherwise might have been given that Sterling contributed to her own injuries. But her comparative fault is but one factor in the fee calculus—the inquiry is broader than the parties' relative fault and is properly informed by other, independent considerations. I am confident that the bankruptcy court will have all such factors in mind when it reconsiders the fees to which Sterling, as the prevailing party, is entitled.