In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1685

PATTI LARDAS,

*Plaintiff-Appellant,*

*v.*

SLAVKO GRCIC, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 193 — **William T. Hart**, *Judge.*

No. 15-1704

DANNY CHRISTOFALOS,

*Debtor-Appellant,*

*v.*

JOSEPH E. COHEN, Chapter 7 Trustee,

*Trustee-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 6958 — **William T. Hart**, *Judge.*

————————————

No. 16-2913

JOHN LAURENCE KIENLEN,

*Creditor-Appellee,*

*v.*

DANNY CHRISTOFALOS,

*Debtor-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15 C 10832 — **William T. Hart**, *Judge.*

————————————

No. 16-4210

PATTI LARDAS,

*Plaintiff,*

and

DANNY CHRISTOFALOS,

*Intervenor-Appellant,*

*v.*

SLAVKO GRCIC, *et al.*,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 193 — **William T. Hart**, *Judge.*

————————————

ARGUED OCTOBER 28, 2015 — DECIDED FEBRUARY 3, 2017

————————————

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. These four related appeals arise
from a long-running and acrimonious business dispute be-
tween appellants Patti Lardas and her nephew Danny Chris-
tofalos on one side and appellees Slavko Grcic and associates
on the other. Appeal Nos. 15-1685 (*Lardas I*) and 15-1704 (*Co-
hen*) were consolidated for oral argument, which took place
on October 28, 2015. Appeal No. 16-4210 (*Lardas II*) concerns

the district court's denial of a motion by Christofalos to re-
open proceedings in *Lardas I*, and we treat it as a successive
appeal. Appeal No. 16-2913 (*Kienlen*) is also successive to the
earlier consolidated appeals. We can decide *Kienlen* and *Lar-
das II* without further oral argument. The briefs and record
adequately present the facts and legal issues, and oral argu-
ment would not significantly aid our decision-making pro-
cess. See Fed. R. App. P. 34(a)(2)(C). We affirm the judgments
and orders on appeal in *Lardas I*, *Lardas II*, and *Kienlen*, and we
dismiss the appeal in *Cohen* as moot.

## I.   *Lardas I (No. 15-1685)*

In *Lardas I*, a diversity jurisdiction action, plaintiff Patti
Lardas brought claims of fraudulent inducement and breach
of contract against defendants Slavko Grcic; his sons, Milovan
and Draza Grcic; Thomas Karacic; and Karacic's employer, the
Amalgamated Bank of Chicago.[1]

The crux of Lardas's controlling amended complaint is
that the Grcics tricked her into participating in a global settle-
ment agreement pursuant to which, among other things, her
nephew Christofalos was to receive a 99% interest in an entity
called Wauconda Shopping Plaza, LLC ("WSP"), with Slavko
Grcic retaining a 1% interest in the entity as well as a lien on
Christofalos's interest. According to Lardas, the Grcics
hatched an elaborate scheme—along with Karacic and the
Amalgamated Bank—to force WSP to default on a loan and,
ultimately, to foreclose on Christofalos's 99% stake and have
the Grcics take control.

---

[1] Christofalos was originally a co-plaintiff in this action, but the dis-
trict court dismissed the initial complaint without prejudice. Lardas filed
an amended complaint as the sole plaintiff.

The defendants moved to dismiss, arguing that Lardas lacked standing to pursue her claims. Though the defendants cited Federal Rule of Civil Procedure 12(b)(6), the district court reviewed their motion pursuant to Rule 12(b)(1). In so doing, the court treated the motion as a facial attack on Lardas's standing, accepting as true the factual allegations in the amended complaint as well as the contents of the settlement agreement appended to the complaint. The court took no additional evidence. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) ("Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction."); see also *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)."). The district court dismissed Lardas's case without prejudice, agreeing with the defendants that Lardas lacked standing to pursue her claims. *Lardas v. Drcic* [*sic*], Nos. 14 C 193 & 14 C 6958, 2015 WL 444321, at *2 (N.D. Ill. Jan. 29, 2015). Because the district court decided the question of standing without resolving factual disputes, we review *de novo* the court's judgment of dismissal. *Berger v. NCAA*, 843 F.3d 285, 289 (7th Cir. 2016).

To pursue a civil claim in federal court, a plaintiff must allege and then prove that she has standing—i.e., that she suffered a concrete and particularized injury-in-fact that is traceable to the defendant's conduct and that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–

81 (2000). Taking Lardas's allegations at face value, the defendants schemed to deprive her nephew Christofalos of his interest in WSP. The problem here is that Lardas had no current or even contingent interest in WSP. In fact, Lardas had transferred her entire interest in a predecessor entity to Christofalos back in 2000. She never held a stake in WSP itself. Through the settlement agreement, Lardas released any and all claims (known and unknown) against the Grcics in exchange for their release of any and all claims (known and unknown) against her. She does not allege that the Grcics violated the terms of that exchange by, for instance, suing her or otherwise seeking to recover anything from her.

In a post-judgment motion for reconsideration, which the district court correctly treated as a motion under Federal Rule of Civil Procedure 59(e), Lardas argued for the first time that Christofalos was a third-party beneficiary of her settlement agreement with the Grcics, such that the alleged scheme to deprive Christofalos of his interest in WSP in turn deprived Lardas of the benefit of her bargain. As a procedural matter, Lardas should have raised this argument during the initial briefing on defendants' motion to dismiss. Rule 59(e) does not entitle a party to advance after judgment a non-jurisdictional argument that could have been presented prior to judgment. See *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). A Rule 59(e) motion may allow a district judge to exercise discretion to consider such a new argument. E.g., *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012); see also *Mendez v. Republic Bank*, 725 F.3d 651, 658–60 (7th Cir. 2013) (same point for Rule 60(b)). Cases such as *Miller* and *Mendez* show, however, that this is a matter of judicial discretion, not a party's entitlement.

In any event, the new argument is without merit. Christofalos was himself a party to the same settlement agreement—not a third-party beneficiary—and he paid $600,000 for the LLC membership interest he acquired from Slavko Grcic. Even if we assume that Christofalos might have had his own claims against Grcic or others arising from the settlement agreement (and any such claims would have wound up in his bankruptcy estate, addressed in the other related appeals), Lardas has alleged no injury personal to her. Nor has she offered any plausible reason why she should be able to assert a claim on behalf of Christofalos. Lardas lacks standing to pursue the claims she asserts, and the district court correctly dismissed her case. That dismissal is AFFIRMED.

## II. *Cohen (No. 15-1704)*

Before Grcic and his associates could perfect their supposed scheme to acquire Christofalos's interest in WSP, Christofalos filed for bankruptcy protection. *Cohen* represents a challenge by Christofalos to a bankruptcy court order issued under 11 U.S.C. § 363(b) authorizing the trustee to sell Christofalos's interest in WSP, as well as any interest he might have in the *Lardas* litigation and a separate state court case. The buyers? None other than the Grcics, who paid $15,000 for these assets in what might have been an attempt to buy peace.

Christofalos's appeal of the sale order rests on two rather remarkable premises. He argues first that by listing his stake in WSP as an exempt asset worth just one dollar, he actually was putting all interested parties on notice that he sought an "unlimited exemption" for that property, regardless of what the property might be worth or what it might potentially sell for. He argues second that the Grcics paid too much for the

assets they acquired—the implication being that the bankruptcy court should have ordered the trustee to drive an easier bargain and settle for less money for the estate's creditors in the process. The bankruptcy court rejected Christofalos's arguments on their merits, and the district court affirmed. 2015 WL 444321, at *3–4.

We do not reach the merits. Christofalos's challenge to the trustee's sale is moot. See *DJL Farm LLC v. U.S. Environmental Protection Agency*, 813 F.3d 1048, 1050 (7th Cir. 2016) (per curiam) ("[A] case must be dismissed 'if an event occurs while a case is pending … that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.'") (citations omitted).[2]

---

[2] Federal district courts exercise appellate jurisdiction over "final judgments, orders, and decrees" entered by bankruptcy judges in "cases and proceedings." 28 U.S.C. § 158(a). Federal circuit courts of appeals in turn exercise appellate jurisdiction over "final decisions, judgments, orders, and decrees" entered by district judges in their appellate capacity. § 158(d)(1); see also *Smith v. Capital One Bank (USA), N.A.*, 845 F.3d 256, 2016 WL 7404760, at *2 (7th Cir. 2016) ("In the bankruptcy context, both the bankruptcy court decision and the district court decision must be final."). Christofalos's appeal in *Cohen* concerns not a final order of the bankruptcy court granting or denying a discharge but rather an event during the life of a Chapter 7 bankruptcy—the sale of an asset. While in previous cases we have recognized that an order approving or denying sale of a debtor's property is immediately appealable, the Supreme Court's recent decision in *Bullard v. Blue Hills Bank*, 575 U.S. —, 135 S. Ct. 1686 (2015), could be read to create a question about the viability of those prior holdings. *Bullard* held that an order *declining* to approve a proposed Chapter 13 repayment plan is not immediately appealable. The Court concluded that the relevant "proceeding," within the meaning of section 158(a), is the "entire process culminating in confirmation or dismissal." *Id.* at 1693. At oral argument, we asked the parties whether the logic of *Bullard* extends

Christofalos opposed the sale of his interest in WSP through a motion to compel the trustee to abandon that property and through an objection to the trustee's motion to sell. The bankruptcy court denied the motion to compel abandonment and approved the sale over Christofalos's objection. At that point, if Christofalos wanted to seek judicial review of the sale order, he should have moved for a stay pursuant to Federal Rule of Bankruptcy Procedure 8007(a)(1)(A), thereby preserving the status quo.

Under 11 U.S.C. § 363(m), the reversal on appeal of an authorized sale "does not affect the validity of a sale … to an entity that purchased … property in good faith … unless such authorization and such sale … were stayed pending appeal." In light of this safe harbor provision, we have "repeatedly held that when a party challenges the bankruptcy court's order approving the sale of estate property to a good faith purchaser, it must obtain a stay of that order pending appeal, lest the sale proceed and the appeal become moot." *In re River West Plaza-Chicago, LLC*, 664 F.3d 668, 671 (7th Cir. 2011), quoting *In re CGI Industries, Inc.*, 27 F.3d 296, 299 (7th Cir. 1994) (collecting cases).

The safe harbor in section 363(m) does not apply if the sale was not conducted in good faith. *Hower v. Molding Systems Engineering Corp.*, 445 F.3d 935, 938 (7th Cir. 2006). But the good faith requirement is narrow, addressing only the buyer's integrity during the course of the sale proceedings. "Typically,

to the approval of discrete asset sales, and we ordered supplemental briefing on the question. We do not resolve here the extent to which *Bullard* may affect the immediate appealability of a sale order because we find that Christofalos's challenge is moot. Accordingly, we dismiss the appeal on that well-trodden ground.

the misconduct that would destroy a purchaser's good faith status … involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Andy Frain Services, Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986) (citation omitted).

Christofalos did not request a stay of the sale order. Instead, the sale was consummated, and the Grcics are now actively managing the shopping plaza and its tenants. Money has changed hands, years have passed, and third parties have acted in reliance on the sale.

Christofalos argues that the Grcics acted in bad faith by offering $15,000 for an asset he believes to have been underwater. Christofalos's argument is not legally sound, and it makes no sense on the facts of this case. He cites no case or other authority for the proposition that a buyer who pays (in the debtor's view) too much for an asset acts in bad faith toward the debtor or other creditors. There may be perfectly good reasons to pay something for a highly leveraged asset that is currently worthless. Fair market values rise and fall, and the purchase allows the buyer to make an investment that may pay off if the value later rises.

As a factual matter, moreover, even if the shopping plaza was financially underwater in 2014, that is not the actual asset the trustee sold: rather, the trustee sold Christofalos's interest in WSP, which was apparently encumbered only by the lien in Slavko Grcic's favor, and which was part of a package. The package of assets the trustee sold included three separate assets of the bankruptcy estate: Christofalos's interest in WSP and his interest in two lawsuits against the Grcics. The Grcics paid $15,000 not only to acquire WSP but also to terminate the litigation against them. Parties in civil cases often choose to

pay relatively small sums to settle claims, even claims that seem far-fetched or vexatious. We cannot understand how, in paying $15,000 for two unliquidated claims and an asset that Christofalos swore was worth only one dollar, the Grcics could be the parties who might be deemed to have acted in bad faith. There is no evidence that their conduct in the bankruptcy proceedings perpetrated a fraud on anyone, amounted to collusion with the trustee, or caused an unfair disadvantage to other bidders, of which there were none. See *In re Andy Frain Services, Inc.*, 798 F.2d at 1125.

In its sale order, the bankruptcy court explicitly found that the Grcics were "good faith purchasers" and that the sale was "conducted at arms-length without fraud, collusion, or undue influence by the purchasers." The bankruptcy court reached these findings after three hearings and the submission of affidavits by the Grcics, the contents of which Christofalos failed to rebut. These findings are reviewable only for clear error, *Hower*, 445 F.3d at 938, and there was no such error here. The Grcics purchased Christofalos's interests in WSP and the two lawsuits in good faith, and Christofalos failed to seek a stay pending appellate review. His challenge to the trustee sale is moot, and his appeal is DISMISSED.

III. *Kienlen (No. 16-2913)*

In *Kienlen*, Christofalos challenges the bankruptcy court's November 23, 2015 order following an adversary proceeding brought by J. Laurence Kienlen, a creditor. The bankruptcy court conducted a trial on the adversary complaint pursuant to Part VII of the Federal Rules of Bankruptcy Procedure, and it made findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). The court entered judgment in Kienlen's favor, denying Christofalos's petition

for a Chapter 7 discharge. The court based its denial on 11 U.S.C. § 727(a)(4)(A), which authorizes denial of discharge where the debtor has "knowingly and fraudulently … made a false oath or account." See *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011) (to prevail on a § 727(a)(4)(A) claim, an objecting party must establish that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case") (citation omitted). The district court affirmed the denial of discharge. *Christofalos v. Kienlen*, No. 15 C 10832, 2016 WL 3268164, at *3 (N.D. Ill. June 14, 2016). We review *de novo* the district court's judgment; we likewise review *de novo* the bankruptcy court's legal determinations, but we review its findings of fact for clear error. *In re Herman*, 737 F.3d 449, 452 (7th Cir. 2013); *Zedan v. Habash*, 529 F.3d 398, 403 (7th Cir. 2008). We affirm.

In its order denying discharge, the bankruptcy court observed that Christofalos made a "host of false statements and omissions in his schedules and statement of financial affairs." For instance, the court found that Christofalos falsely represented that he had issued no financial statements to financial institutions within two years of his petition. Christofalos also grossly undervalued his real property located in Mundelein, Illinois. He failed to identify a source of rental income, omitted a property located in Florida, and falsely asserted that he had relinquished all interest in another property following his divorce. He also omitted a vehicle and falsely represented that he had no contingent and unliquidated claims. The bankruptcy court found as a matter of fact after trial that Christofalos knew these representations were false and that he made

them with fraudulent intent. The court explained: "Christofalos could not have cared less whether his schedules and statement of financial affairs were accurate."

On appeal, Christofalos quarrels with some of the bankruptcy court's factual findings, but without citing record evidence.[3] He nevertheless concedes that he made multiple errors in his bankruptcy disclosures. To obtain reversal, he contends that these errors were "completely inconsequential and immaterial" because they worked neither to his benefit nor to the detriment of any creditor.

---

[3] Christofalos designated only the adversary pleadings, the transcript of the bankruptcy court's November 23, 2015 oral decision, and the bankruptcy court's subsequent judgment as the record on appeal in the district court. He did not designate or otherwise produce any transcripts or exhibits from the trial, either in the district court or in this court. We cannot entertain claims that factual findings were clearly erroneous when the party claiming error fails to include in the appellate record the evidence we would need to evaluate the claim. See Fed. R. Bankr. P. 8009(a)(1)(A), (b)(1)(A) (providing that the bankruptcy appellant must designate items to be included in the record on appeal and must order transcripts of "such parts of the proceedings … as the appellant considers necessary for the appeal"); see also Fed. R. Bankr. P. 8009(b)(5) ("If the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits."); cf. *In re Dorner*, 343 F.3d 910, 912, 914–15 (7th Cir. 2003) (where bankruptcy clerk failed to transmit record that debtor-appellant had designated, but where appellant failed to supplement record on appeal in circuit court and "elected to proceed as if there were no problem," circuit court found on skeletal record "no reason to think that the bankruptcy judge committed a clear error or abused his discretion"); *id.* at 914–15 ("A litigant whose position in the court of appeals depends on extra-record evidence loses forthwith.").

That assertion is not plausible. If Christofalos had succeeded in concealing or misrepresenting his assets, he might well have obtained a discharge while at the same time retaining property that rightfully belonged to the bankruptcy estate for the benefit of his creditors. In any case, materiality in the bankruptcy context has a broad meaning: "a fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Stamat*, 635 F.3d at 982, quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010); cf. *Skavysh v. Katsman (In re Katsman)*, 771 F.3d 1048, 1050 (7th Cir. 2014) (observing that fraud in the bankruptcy context encompasses intent to deceive, which "need not connote intending to obtain a pecuniary benefit"). The bankruptcy court was not required to find an affirmative detriment to Christofalos's creditors (or an affirmative benefit to Christofalos) in concluding that Christofalos made fraudulent statements within the meaning of § 727(a)(4)(A). After all, the "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Stamat*, 635 F.3d at 983 (citation omitted).

Christofalos pleads for clemency, contending that it was not he but his attorney who could not have "'cared less' about the accuracy of the schedules" and that it would be a "gross injustice to penalize Christofalos for the incompetence of his counsel." The brief making this argument was filed by the same attorney, Maurice Salem, who accuses himself of incompetence. Whether attorney Salem committed malpractice or violated the Illinois Rules of Professional Conduct is not before this court. But Salem himself testified in the adversary proceeding that he reviewed the schedules and statement of

financial affairs with his client, paragraph by paragraph. That evidently unrebutted testimony supports the bankruptcy court's conclusion that Christofalos's misstatements were not inadvertent but were intentional and fraudulent. The denial of Christofalos's petition for a Chapter 7 discharge is AFFIRMED. Given the gravity of the apparent misconduct here, we are referring this case to the United States Attorney for the Northern District of Illinois for further review.

## IV. *Lardas II (No. 16-4210)*

In *Lardas II*, Christofalos appeals the denial of his "Motion to Reopen Case and Assign a Receiver" and his subsequent motion for reconsideration, both of which he filed in Lardas's case in district court while that case remained under advisement in this court in Appeal No. 15-1685. Christofalos cited no authority for his "Motion to Reopen." Because he is no longer a plaintiff in his aunt's case—the district court dismissed the original complaint and Lardas re-filed as sole plaintiff—we assume he sought both permissive intervention under Federal Rule of Civil Procedure 24(b) and then relief from a final judgment pursuant to Rule 60(b)(6). The district court denied Christofalos's motions, *Lardas v. Grcic*, No. 14 C 193, 2016 WL 7367946, at *2 (N.D. Ill. Dec. 20, 2016). Having reviewed the district court's decision and Christofalos's brief, we summarily affirm.

The relief Christofalos seeks would be unusual under any circumstances. "Permissive intervention under Rule 24(b) is wholly discretionary," *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000), while Rule 60(b) provides an "extraordinary remedy" for exceptional situations, *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009) (cita-

tion omitted). Christofalos asserts that he is entitled to inter-
vene in his aunt's lawsuit because the bankruptcy trustee
"abandoned" his claim against the Grcics. That assertion is
simply wrong. As noted, the trustee *sold* Christofalos's claim,
along with his interest in WSP and another lawsuit, to the
Grcics. We dismiss as moot Christofalos's challenge to that
sale. Christofalos has no remaining interest in his prior claim.
We also affirm the dismissal of Lardas's suit for lack of stand-
ing, so even if Christofalos had some remaining claim, there
is no live case in which he might intervene. The district court
was right to deny Christofalos's last-ditch effort to prolong
this multi-front litigation. The district court's decision is
AFFIRMED.