Scudder, Circuit Judge.
In 2013 Monik Chlad and her husband, Eric Vehovc, filed a joint petition under Chapter 7 of the Bankruptcy Code seeking to discharge about $5 million of debt. After Chlad and Vehovc filed financial disclosures *859 in relation to their petition, two creditors brought an adversary proceeding objecting to the discharge. Alleging that the filings omitted information material to the debtors' financial condition, the creditors invoked 11 U.S.C. § 727(a)(4) and sought to prevent the discharge. Following a bench trial, the bankruptcy court denied the discharge, finding that the omissions reflected material false statements made with fraudulent intent. The district court affirmed, and only Chlad has appealed. Seeing no clear error in the bankruptcy court's factual findings, we too affirm the denial of discharge.
I
Chlad is the sole owner of a real estate company named Lockwood Development, Inc. Chlad's husband worked for Lockwood as well, and the two ran the company together. They also owned several parcels of real estate in their own names. In connection with their bankruptcy petition, Chlad and Vehovc filed the required Statement of Financial Affairs and bankruptcy schedules. As its names implies, the Statement of Financial Affairs required the debtors to disclose information about their finances, including sources of income, and payments to creditors and other transfers made within specified time periods. The bankruptcy schedules required the debtors to identify interests in property and creditors as of the date of the bankruptcy petition. Chlad and Vehovc accompanied these disclosures with a declaration stating under penalty of perjury that they had reviewed the information in those documents and it was true and correct.
The disclosures in those filings-and more importantly, what was not disclosed-gives rise to this appeal. Two creditors, Mitchell Chapman and Semy Investments Ltd., commenced an adversary proceeding identifying numerous omissions in the filings and challenging the debtors' eligibility for a Chapter 7 discharge. They alleged that Chlad and Vehovc failed to disclose the existence of particular real estate, a significant creditor, bank accounts, a shareholder loan, certain sources of income, and an alternate first name used by Chlad. The absence of this information from Chlad's financial filings in the bankruptcy court is undisputed.
The omissions underlying the issues on appeal are:
• Chlad did not disclose real estate located on Van Buren Street in Chicago that she and Vehovc jointly owned, and the related fact that the property secured mortgages. Chlad misstated that one of these mortgages was secured by another property.
• Chlad failed to report the existence of a significant creditor-Edgebrook Bank. Chlad's company, Lockwood, had executed a promissory note for over $800,000 in favor of Edgebrook Bank. While the note was secured by a mortgage on a parcel of real estate, Chlad and Vehovc personally guaranteed Lockwood's obligations to Edgebrook Bank.
• Chlad failed to disclose a shareholder loan of over $1 million she had received from Lockwood. From 2010 to 2013, Lockwood's tax returns disclosed a loan to a shareholder-Chlad-which was as high as $1.2 million at the beginning of 2010. The loan balance fell to $50,000 by the end of 2012, and to $0 by the end of 2013. Chlad neither disclosed Lockwood as a creditor nor any transfers to Lockwood made in the year preceding the bankruptcy petition.
• Chlad's filings made no mention of two jointly owned bank accounts-one with her mother and another with a Lockwood subcontractor-as well as related transfers of funds out of those accounts within the two *860 years preceding the bankruptcy petition.
• Chlad likewise failed to report certain sources of income received during the two years preceding the bankruptcy petition-child support payments and rental income that provided her more than $4,000 a month.
• Chlad failed to disclose that, in addition to the name "Monik," she also used the first name "Monika" in her business affairs, including on multiple bank accounts and tax returns.
The bankruptcy court resolved the adversary proceeding by holding a bench trial. Chlad testified that the omissions in her filings were the result of innocent mistakes. She explained that she had shared most of the omitted information with her bankruptcy attorney and that he was at fault for not ensuring the completeness and accuracy of her filings with the bankruptcy court. Chlad's attorney likewise testified and generally maintained that he was responsible for some of the omissions in Chlad's filings.
But the trial testimony also showed that Chlad actively managed her financial affairs and had knowledge of Lockwood's business dealings and her own assets and liabilities. Other testimony revealed that, prior to bankruptcy, Chlad hired an assistant to collect information about the properties she owned. Chlad then shared the resulting inventory, which included the Van Buren property in Chicago, with her attorney. Furthermore, prior to filing the financial disclosures with the bankruptcy court, Chlad met multiple times with her attorney and discussed the information in the filings. Chlad's attorney advised her of the consequences of making misstatements in the submissions and together they reviewed the filings page by page before ultimately filing them in the bankruptcy court.
The trial concluded with the bankruptcy court denying Chlad and her husband a discharge under § 727(a)(4) of the Bankruptcy Code. The court determined that the omissions and misstatements were material and reflected false statements made under oath that the debtors knew or should have known to be false. The court further concluded that, taken together, the omissions and misstatements demonstrated a reckless disregard for the truth, which was sufficient to support a finding of fraudulent intent necessary to deny discharge under § 727(a)(4). In a well-reasoned and thorough opinion, the district court affirmed.
II
Discharge under Chapter 7 "is reserved for the 'honest but unfortunate debtor.' " In re Kempff, 847 F.3d 444, 447 (7th Cir. 2017) (quoting Stamat v. Neary , 635 F.3d 974, 978 (7th Cir. 2011) ). Section 727 of the Bankruptcy Code enforces this reservation by providing grounds for denying a discharge to dishonest debtors. See 11 U.S.C. § 727(a). The creditors' challenge to Chlad's discharge falls under § 727(a)(4)(A), which withdraws a debtor's eligibility for discharge where she "knowingly and fraudulently, in or in connection with the case-(A) made a false oath or account." The creditors bear the burden of establishing Chlad's ineligibility for discharge by a preponderance of the evidence. See Kempff , 847 F.3d at 447.
A
We begin with Chlad's contention that the bankruptcy court's decision denying her discharge should be reviewed de novo . She disagrees most especially with the bankruptcy court's finding that she acted with fraudulent intent in omitting the required information, insisting that the inquiry is a mixed question of law and fact *861 entitled to de novo review. This position is at odds with our caselaw.
On appeal from a district court's review of a bankruptcy court's ruling, we review the bankruptcy court's factual findings for clear error and the legal conclusions of both the bankruptcy court and the district court de novo . See Kempff , 847 F.3d at 448. And, with respect to the fraudulent intent inquiry in particular, we have explained that "[w]hether a debtor possessed the requisite intent to defraud is a question of fact, which is subject to the 'clearly erroneous' standard of review." Id. at 449 (quoting In re Marcus-Rehtmeyer , 784 F.3d 430, 436 (7th Cir. 2015) ).
This more deferential clear error standard makes sense because an "intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility, making deference to the court's finding particularly appropriate." In re Krehl , 86 F.3d 737, 743 (7th Cir. 1996). Indeed, in recognition of the ringside view that the bankruptcy court occupies in making the intent determination, "where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." Id. at 744. We therefore review the bankruptcy court's determination that Chlad acted with fraudulent intent-and all of its other factual findings-for clear error.
B
By its terms, § 727(a)(4)(A) provides a ground for denying discharge where the debtor "knowingly and fraudulently" makes a "false oath or account" in connection with the bankruptcy proceeding. We have thus required the party opposing discharge to prove that the debtor made a material false statement under oath, the debtor knew the statement was false, and the statement was made with fraudulent intent. See Stamat , 635 F.3d at 978.
All agree that the omissions in Chlad's bankruptcy filings constituted false statements made under oath. From there, however, Chlad takes issue with the remaining elements, contending that the omissions were not material and neither made with knowledge nor intent to defraud the bankruptcy court or her creditors. She insists that the omissions reflected innocent mistakes, including by her bankruptcy attorney, and in any event, were inconsequential to the administration of her estate.
The battleground of this appeal lies in § 727(a)(4)'s requirement that the statements be made both "knowingly" and "fraudulently." We have no trouble concluding that Chlad had knowledge of the information omitted from her financial filings in the bankruptcy court. This is not a scenario in which a debtor had little familiarity with her financial affairs, left business affairs to others, or took care to ensure complete and accurate disclosures only to learn after the fact of an isolated mistake or two. Quite the opposite was true. Chlad was informed of her own financial condition and the business and financial affairs of Lockwood, and she devoted time to gathering information to ensure she had a complete and accurate picture. Take, for example, the Van Buren property that Chlad and her husband owned in Chicago. Chlad hired an assistant to collect information regarding properties that she, her husband, and Lockwood owned. The trial revealed that she not only reviewed the inventory of the properties, but also discussed with her assistant and attorney her desire to avoid losing the Van Buren property as a result of the bankruptcy.
Chlad raises no real dispute about her knowledge of the Van Buren property, the guaranty to Edgebrook Bank, the joint bank accounts, the additional sources of *862 income, and the use of an alternate name in prior financial dealings. She contends, however, that she was unaware of the reduction of the shareholder loan from Lockwood, asserting that the loan reduction was an "accounting function write-down" performed by her tax preparers. But this only gets Chlad so far, for the record shows her knowledge of the loan itself. The trial evidence demonstrated that, every year from 2010 through 2013, Chlad reviewed and signed Lockwood's tax returns, each of which disclosed the loan she received from Lockwood. Lockwood's tax preparer also testified to discussing the shareholder loan with Chlad. As the bankruptcy court explained, "[e]ither the shareholder loan existed as of the Petition Date" and Chlad's schedules were false because they failed to identify Lockwood as a creditor, or "Chlad repaid the loan prior to the Petition Date" and Chlad's Statement of Financial Affairs was false because it failed to list any payment to Lockwood made within one year of the bankruptcy petition. Either way, the record leaves no doubt that Chlad knew of the loan's existence.
At a broader level, Chlad argues that the bankruptcy court erred in finding the knowledge requirement satisfied because she knew or should have known that her financial filings contained false statements. Chlad is correct to observe that a "should have known" standard does not align with the language of § 727(a)(4), which requires that the false statement be made "knowingly." Yet, apart from reciting this standard, the bankruptcy court made no finding rooted in anything less than Chlad's knowledge. The court found that Chlad knew of each of the assets, liabilities, and other items she omitted from her filings.
To be sure, we do not read § 727(a)(4)'s knowledge requirement, as Chlad seems to urge, as necessitating an awareness of a legal obligation to disclose particular information. Chlad's actual knowledge of the omitted information itself suffices to fulfill this element.
We come, then, to the more substantial issue in this appeal-whether the bankruptcy court clearly erred in finding that Chlad acted "fraudulently" as required by § 727(a)(4). This aspect of the statute focuses on Chlad's mindset when she omitted information from her bankruptcy disclosures. We ask whether Chlad did so intending to deceive her creditors and the bankruptcy court. See In re Katsman , 771 F.3d 1048, 1050 (7th Cir. 2014). It is not necessary that the creditors demonstrate that Chlad "intend[ed] to obtain a pecuniary benefit" through her omissions. See id. Rather, "[e]vidence of 'reckless disregard for the truth is sufficient to prove fraudulent intent.' " Kempff , 847 F.3d at 449 (quoting Stamat , 635 F.3d at 982 ). While "simple negligence or innocent misunderstandings" cannot serve as the basis for a finding of fraudulent intent, id. at 451, a finding of fraudulent intent "may be based on inferences drawn from a course of conduct," Matter of Yonikus , 974 F.2d 901, 905 (7th Cir. 1992). A debtor's reckless disregard for the truth may be found through an evaluation of the circumstances as a whole and the pattern of omissions engaged in by the debtor. See Stamat , 635 F.3d at 982. A finding of fraudulent intent is proper, where, in light of a "larger picture of omissions and errors ... the totality of the [debtor's] omissions and errors rises above mere negligence to the level of reckless disregard for the truth." Id.
In evaluating Chlad's intent, her knowledge of the omitted information properly informs the inquiry into her mindset in not disclosing the requisite information. The explanation of a mistake is more likely to be true where the facts show that the debtor did not know of a liability or asset *863 or did not fully understand her own financial affairs. Here, however, Chlad took an active role in her financial affairs and was aware of her assets and liabilities. So, too, was she aware of her bankruptcy proceedings and the need to file disclosures with the bankruptcy court. Chlad supplied the necessary information to her attorney, met with him numerous times, and reviewed her filings page by page with him before they were filed. The resulting filings included a series of omissions and errors that deprived the court and Chlad's creditors of an accurate and complete account of Chlad's financial affairs preceding bankruptcy and financial condition as of the petition date.
The bankruptcy court was right to underscore the overarching pattern of false statements plaguing Chlad's filings. The filings suffered from multiple omissions and errors, and this pattern contributed meaningfully to the bankruptcy court's finding that she engaged in a "series of statements that [she] knew were false and material" and reflected a reckless disregard for the truth.
In reaching this conclusion, the bankruptcy court took care to discredit some of Chlad's alternative explanations. The bankruptcy court, for instance, explained that the fact that Chlad knew of the Van Buren property and conducted a detailed review of her schedules with her attorney before submitting them, "casts doubt on [her] testimony that the omission of the Van Buren Property from [her] Schedules was inadvertent." For her part, Chlad points out that the bankruptcy court did not conclude that her testimony as a whole was not credible. Perhaps so. But this does not mean we can disregard the credibility determinations that the court did make. The record shows that the bankruptcy court weighed the totality of the testimony it heard and other evidence it received, and, in the end, determined that Chlad's pattern of omissions evinced a reckless disregard for the truth.
Chlad may be right that some of her omissions-if viewed in isolation-may reflect mistakes. Consider, for example, the fact that some of the omitted information-such as the existence of her alternate first name-was shared with the bankruptcy trustee. By focusing on isolated omissions, Chlad suggests a reason why each piece of information was omitted. But Chlad's patchwork reasoning asks us to ignore the broader pattern clear from the trial evidence: that Chlad made a series of false statements about information of which she was aware. Viewing this evidence in its totality-including the explanations Chlad offered for the omissions-the bankruptcy court found that Chlad's actions as a whole evinced a reckless indifference for the truth in the representations made in her filings. And even if we accept Chlad's piecemeal approach, and conclude that the evidence allows "two permissible conclusions" to be drawn about Chlad's intent, "the bankruptcy court's choice between them will not be viewed as clearly erroneous." Krehl , 86 F.3d at 744.
We owe a brief word on Chlad's final argument that the omitted information was immaterial. "[A] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.' " Lardas v. Grcic , 847 F.3d 561, 570 (7th Cir. 2017) (quoting Stamat , 635 F.3d at 982 ). Applying that standard here, we find unpersuasive Chlad's arguments that the information was insignificant or related to assets worth nothing to the estate. Chlad points out, for example, that the undisclosed bank account she shared with her mother had only around $2,000 withdrawn from it in two years. No doubt that this amount is *864 small relative to the $5 million in debt that Chlad sought to discharge. But here again Chlad looks at each piece of information in isolation and fails to recognize that it bears a relationship to her business transactions and financial affairs. And we have emphasized that "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." Yonikus , 974 F.2d at 904.
Returning to the example of the undisclosed bank accounts, those accounts relate to the existence and disposition of Chlad's property, thereby satisfying the materiality requirement. Chlad's argument regarding materiality is even weaker with respect to some of her other omissions. Chlad's personal guaranty to Edgebrook Bank, for example, imposed an obligation of over $800,000 on her. By no means is this an insignificant amount, even compared to the estate as a whole. The omitted information bore on Chlad's business dealings and the disposition of her property and was therefore material to her bankruptcy.
At bottom Chlad's appeal asks us to reweigh the evidence in her favor and conclude that her omissions were immaterial and the result of inadvertence and innocent mistakes. But we decline to disturb the factual findings of the bankruptcy court, which find ample support in the record evidence. Nor can we adopt Chlad's approach of viewing each piece of omitted information in isolation and ignoring the broader pattern of omissions and errors underlying the bankruptcy court's finding that she acted with fraudulent intent.
On this record, then, we AFFIRM.