In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-2773

IN RE: JACQUELINE M. STERLING,

*Debtor-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:16-cv-00384 — **Joseph S. Van Bokkelen**, *Judge.*

_____

ARGUED APRIL 15, 2019 — DECIDED AUGUST 13, 2019

_____

Before WOOD, *Chief Judge*, and BAUER and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Debtors' prisons are viewed as relics of the past, long out of use and out of favor. Yet here we face a case of a jailed debtor that calls to mind the days when people were imprisoned for failing to pay their debts.

Jacqueline Sterling owed outstanding fees to Southlake Nautilus Health & Racquet Club, Inc., and Southlake had its counsel, Austgen, Kuiper & Associates, P.C. ("Austgen"),[1]

---

[1] Austgen, Kuiper & Associates, P.C., changed its name throughout the period relevant to this case. For ease, we will refer to it as "Austgen."

institute a state-court collection action in Lake County, Indiana. A federal bankruptcy court later discharged Sterling's debt to Southlake. Although Sterling notified Southlake of the discharge, it appears that no one notified Austgen or the state court in which the collection action was pending. Sterling failed to appear in the state-court proceedings, and the court issued a warrant for her arrest. A year later, Sterling was arrested and jailed. She was ultimately released, and Southlake and Austgen dropped pursuit of the debt.

Sterling instituted adversary proceedings in bankruptcy court against Southlake, Austgen, and David Austgen (the head of the Austgen firm). She sought to have the defendants held in contempt for continuing to collect a debt that the bankruptcy court had ordered discharged. Both the bankruptcy court and the district court ruled against Sterling. She now appeals to us, and we affirm in part and reverse in part. We conclude that Austgen's lack of knowledge of the discharge order prevents it from being held in contempt. But as to Southlake, we conclude that it must be held liable for the actions taken by counsel on its behalf.

## I. Background

Despite involving a small sum, the procedural history of this case spans nearly two decades. In July 2001, Austgen filed a claim in Lake County Superior Court on behalf of its client, Southlake, alleging that Sterling owed Southlake approximately $520 in unpaid membership fees. In February 2002, the Lake County court entered a default judgment against Sterling and in favor of Southlake.

For several years after, Austgen filed "proceedings supplemental" to collect on the judgment, and Sterling

repeatedly failed to show up for hearings set by the Lake County court. Austgen sought multiple orders to show cause demanding that Sterling explain why she was not complying with the state court's orders. Ultimately, in April 2010, the Lake County court issued a "body attachment" (i.e., a bench warrant) for Sterling.

Nearly a year later, in March 2011, as Sterling was driving, her car got a flat tire. A police officer stopped to assist her, and to both of their surprise, he discovered the outstanding warrant. The officer arrested Sterling, and she spent approximately two days in jail.

The problem here was that Sterling had filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana in 2009. Sterling listed Southlake as a creditor, and the bankruptcy court discharged her debt to Southlake in January 2010. The discharge order effectively enjoined Austgen from pursuing Sterling's outstanding debt to Southlake. *See* 11 U.S.C. § 524(a). Austgen, therefore, should not have continued to prosecute the case in Lake County court, and by extension, Sterling should not have been arrested and jailed.

A lack of communication caused this misunderstanding. Southlake was a listed creditor in Sterling's bankruptcy proceedings and, as a result, it was sent notice of the discharge. Yet Southlake failed to notify Austgen of the discharge. Sterling, for her part, failed to notify either the Lake County court or Austgen that the debt at issue had been discharged, despite a local bankruptcy rule requiring her to do so. *See* N.D. Ind. L.B.R. B-4002-1(a).

After an unsuccessful state-court lawsuit regarding her arrest,[2] Sterling filed a complaint in the bankruptcy court against Southlake, Austgen, and David Austgen. She alleged that the defendants violated 11 U.S.C. § 524 by seeking to collect on a discharged debt, and she petitioned for the defendants to be held in civil contempt for violating the court's discharge order. In November 2014, the bankruptcy court held a two-day bench trial. At the close of Sterling's case, the defendants moved for judgment on partial findings. Fed. R. Civ. P. 52(c); Fed. R. Bankr. P. 7052. The bankruptcy court granted the motion as to David Austgen and dismissed him from the case. That ruling is not at issue here. But the court deferred ruling on Southlake's and Austgen's motions until the close of evidence and submission of written memoranda in support of the motions. The parties complied, and the bankruptcy court later ruled in favor of Southlake and Austgen.

To hold the defendants in contempt for violating 11 U.S.C. § 524(a), the bankruptcy court noted, Sterling had to establish that the defendants "had knowledge of the granting of her discharge … and, despite that knowledge, undertook actions which wilfully violated the post-discharge injunction." The bankruptcy court ruled in favor of Austgen because the element of knowledge was lacking—Sterling had failed to establish that Austgen knew of the discharge order when it continued proceedings against her. The bankruptcy court concluded that, although Austgen could have looked up whether Sterling had entered bankruptcy proceedings, Augsten did

_____

[2] Sterling sued Southlake, Austgen, and David Austgen in Indiana state court, alleging malicious prosecution, abuse of process, and infliction of emotional distress. It appears that suit was dismissed for lack of subject-matter jurisdiction.

not have an affirmative duty to inquire about Sterling's status. Instead, the court said, Sterling should have notified Austgen of the discharge.

As for Southlake, the bankruptcy court found that Southlake had received notice of the discharge order and had knowledge of it. But the court determined that Southlake did not willfully violate the discharge order because, beyond initially referring Sterling's case for collection proceedings in 2001, there was no evidence that Southlake was aware of the status of its case against Sterling or that it directed Austgen to take any particular action in the case.

The district court affirmed the judgment of the bankruptcy court. Sterling appeals.

## II. Discussion

We review the bankruptcy court's civil contempt ruling for an abuse of discretion. *In re Taylor*, 793 F.3d 814, 818 (7th Cir. 2015). We will reverse a contempt decision only if it is based upon an error of law, which we review *de novo*, or of fact, which we review for clear error. *Id.*; *see also In re Chlad*, 922 F.3d 856, 861 (7th Cir. 2019). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011) (internal quotation marks omitted). We review the district court's judgment *de novo*. *Lardas v. Grcic*, 847 F.3d 561, 569 (7th Cir. 2017).

When a party violates a bankruptcy court's order by pursuing a discharged debt, the debtor can ask that the court hold that party in contempt. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). But the debtor can do so only for willful

violations. "A willful violation does not require specific intent" to violate the court's order. *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009).[3] A willful violation does, however, require that the offending party both violated the court's order and had "actual knowledge that a bankruptcy is under way or has ended in a discharge." *Randolph*, 368 F.3d at 728. Sterling, as the debtor, had the burden of proving the defendants' contempt by clear and convincing evidence. *See Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016).

## A. Southlake

We first address whether Southlake committed a willful violation, requiring both actual knowledge of the discharge order and an action violating it. Here, the bankruptcy court found that Southlake had knowledge that Sterling's debt to it had been discharged. It based this finding on several facts: (1) notice was sent to Southlake via the Bankruptcy Noticing Center through first-class mail; (2) Southlake provided no evidence that the notice was not received and thus Sterling was entitled to the presumption that it was received; and (3) at the relevant time, Southlake's mail, including bankruptcy notices, would have been taken to the office of Martin Shreibak, Southlake's corporate officer. The bankruptcy court drew the reasonable inference that Shreibak read the bankruptcy notices he received. Though the bankruptcy court described Southlake as having "knowledge" without using the added

---

[3] *In re Radcliffe* involved 11 U.S.C. § 362, which deals with automatic stays, not discharge injunctions. We have, however, previously discussed automatic stays and discharge injunctions in tandem. S*ee Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004).

adjective "actual," its findings demonstrate actual knowledge.[4]

We see no reason to disturb the bankruptcy court's finding of Southlake's knowledge. It is possible, as Southlake argues, that Shreibak never actually received or read the notice. But the bankruptcy court's contrary inference, based on the evidence at trial, that Shreibak did, in fact, do so was not clearly erroneous. *See In re Chlad*, 922 F.3d at 861 (noting that because the bankruptcy court has a "ringside view" of the case, we will not disturb its choice between "two permissible conclusions" (internal quotation marks omitted)).

That leaves violative action. The bankruptcy court found that Southlake had itself taken no action that violated the discharge order. That finding might be factually correct, but it reflects an error in legal reasoning—that Southlake is responsible for only its own actions and not those of Austgen. The district court similarly erred in this respect, concluding that Southlake could only be held liable if it intentionally withheld notice of the discharge order from Austgen.

We have repeatedly stated that clients are bound by their counsel's conduct. *See, e.g., Smego v. Payne*, 854 F.3d 387, 396 (7th Cir. 2017); *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). This makes perfect sense when viewed through the lens of agency law: "the clients are principals, the attorney is an agent, and under the

---

[4] The district court stated that the bankruptcy court found that Sterling had been unable to prove that anyone at Southlake handled, saw, or was aware of Sterling's discharge notice. This is a mischaracterization. The bankruptcy court in fact found that Southlake had no *record* of how it handled the notice once received.

law of agency the principal is bound by his chosen agent's deeds." *Bakery Mach. & Fabrication*, 570 F.3d at 848 (quoting *United States v. 7108 West Grand Avenue*, 15 F.3d 632, 634 (7th Cir. 1994)); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 91 (1990) ("Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent … .'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). Though the parties have not made clear whether they believe Indiana law or federal common law applies here, this proposition also holds true under Indiana law. *See Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1255 (Ind. Ct. App. 1999) ("The long standing rule in Indiana is that … acts or omissions of the attorney are attributable to the client. … Moreover, it is well settled that an attorney, by virtue of the representation, becomes a powerful agent with a great deal of authority." (citations omitted)).

Southlake resists the application of agency liability. It argues that it cannot be liable for Austgen's conduct because Austgen did not have the requisite knowledge to be held in contempt (discussed further below). It is true that, in its usual application, agency law holds a principal liable for the completed torts of its agent. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals … vicariously liable for acts of their agents … in the scope of their authority or employment."). But agency law also operates to impute an agent's conduct to a principal, even if that conduct did not, standing alone, constitute a tort. As the Restatement (Third) of Agency explains: "If an agent's action within the scope of the agent's actual authority harms a third party, … the principal is subject to liability if the same conduct on the part of the principal would have subjected the principal to tort

liability." § 7.04 cmt. b (2006). Bankruptcy courts both in and out of our circuit have applied this principle in the same or similar contexts. *See, e.g.*, *In re Kramer*, No. 04-02900, 2005 WL 579721, at *4 (Bankr. N.D. Iowa Feb. 23, 2005) (concluding that a debtor acted in contempt of a bankruptcy court's automatic stay where it had knowledge of the stay, and counsel's actions, imputed to it, violated the stay); *see also In re Gallo*, No. 05-92345, 2007 WL 2463321, at *2 (Bankr. C.D. Ill. Aug. 29, 2007) (concluding that a party acted through his counsel when counsel's actions were in the scope of his authority, applying Florida law), *aff'd*, 573 F.3d 433 (7th Cir. 2009).

Applying these agency principles to the case at hand, it is undisputed that Austgen was Southlake's legal counsel and that Southlake directed Austgen to collect Sterling's debt. Acting within that scope, Austgen continued proceedings against Sterling. Austgen's actions were a direct violation of the discharge order. 11 U.S.C. § 524(a)(2). We conclude that Austgen's actions, imputed to Southlake, were taken despite Southlake's knowledge of the discharge order, meeting the requirements for civil contempt. The bankruptcy court erred as a legal matter by concluding otherwise.[5]

Southlake argues that it had no knowledge of what actions Austgen was taking on its behalf. It may be true that Southlake did not follow what steps Austgen was taking (an approach we consider to be ill-advised, especially after receiving notice of a discharge). But this is not a case where counsel committed a wrongful act outside of the scope of its authority.

---

[5] Because we decide this issue on agency grounds, we need not address Amici Curiae's argument that Southlake had an affirmative duty to dismiss its case against Sterling.

*See Bakery Mach. & Fabrication*, 570 F.3d at 848 ("The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client."). Southlake chose to aggressively pursue small debts and was familiar with the process of doing so; in fact, it referred hundreds of collection cases to Austgen. Southlake cannot now disclaim the results of its collection efforts. It had knowledge of the discharge yet turned a blind eye to the progress of Sterling's case.

Our conclusion here is not only consistent with our circuit precedent, it is sensible. Holding otherwise would create a loophole in the law through which creditors could avoid liability simply by remaining ignorant of their agents' actions or by failing to notify their agents of debtors' bankruptcy proceedings. We decline to incentivize such careless behavior.[6]

Lastly, we note that Southlake is a sophisticated party that retained counsel, a fact relevant to our holding. In cases where counsel is appointed or recruited, however, "the usual assumptions about the agency relationship between the lawyer and client must be relaxed." *Dunphy v. McKee*, 134 F.3d 1297, 1302 (7th Cir. 1998).

**B. Austgen**

As we just established, Austgen's continuation of the action against Sterling violated the discharge order. But what about Austgen's knowledge?

---

[6] This loophole would not apply in situations where there is no agency relationship, for example, when there is solely an independent contractor relationship. *Cf. Randolph*, 368 F.3d at 729 (discussing the creditor and debt-collector relationship under the Fair Debt Collection Practices Act).

The bankruptcy court found that Austgen "had neither notice nor knowledge" of the discharge order. Specifically, the court concluded that, although "at times" Southlake had a practice of sending bankruptcy notices to Austgen, there was no evidence that Southlake sent Sterling's discharge order to Austgen or that Austgen received it. Sterling urges us to find otherwise.

Recall that Sterling was required to show Austgen's knowledge by clear and convincing evidence. But, unlike the evidence against Southlake, which included a certificate of mailing for the discharge order, there is a dearth of evidence showing that Southlake sent the order to Austgen. On top of that lack of evidence, David Austgen testified that he had reviewed Austgen's files on Sterling, and they contained no record of receiving the order. The bankruptcy court apparently considered David Austgen credible, as it found that Austgen had no record of receiving any bankruptcy notices pertaining to Sterling.

Sterling points to evidence that might suggest the opposite inference: she told Austgen that she was thinking of filing for bankruptcy (albeit over a year before she actually did); Shreibak testified that Southlake usually sent bankruptcy notices to Austgen; and Austgen had poor record-keeping practices and a portion of her file was missing. As we have already noted, however, we do not disturb a bankruptcy court's finding when it accepts one of two reasonable inferences. The bankruptcy court has the opportunity to scrutinize witnesses and determine credibility firsthand, an advantage we lack. *See In re Chlad*, 922 F.3d at 861. The bankruptcy court's finding that Austgen did not have the requisite knowledge was

reasonable and was supported by the evidence. We see no clear error in it.

This puts Austgen in the inverse position of Southlake—Ausgten was unaware of the bankruptcy court's discharge order but acted in violation of it. Unlike with Southlake, however, we do not impute the principal's knowledge to the agent. *See* Restatement (Third) of Agency § 5.03 cmt. g (2006) ("[A]n agent who deals with third parties on the principal's behalf is not treated as knowing facts known by the principal that the agent does not know or have reason to know."); *Schmitt v. FMA All.*, 398 F.3d 995, 997 (8th Cir. 2005) (per curiam) (noting that "established agency law … dictates that while the knowledge of the agent is imputed to the principal, the converse is not true."); *see also Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 n.15 (7th Cir. 1998) (noting that courts rely on the Restatement of Agency to develop the federal common law of agency). Again, this proposition also appears to be true under Indiana law. *See Hargis v. United Farm Bureau Mut. Ins. Co.*, 388 N.E.2d 1175, 1179 (Ind. Ct. App. 1979) (declining to impute the knowledge of a principal to its agents).

So Austgen did not have firsthand knowledge of the discharge order, nor do we impute Southlake's knowledge to it. Without knowledge, Austgen cannot have willfully violated the discharge order and cannot be held in contempt. Both the district court and the bankruptcy court correctly concluded as much, and we affirm their rulings.

### III. Conclusion

A final word of caution. Although we conclude that Southlake acted in contempt, we note that this regrettable event

could have been avoided had Sterling complied with Northern District of Indiana Local Bankruptcy Rule B–4002–1(a). Like the bankruptcy court, we strongly advise debtors and their counsel to comply with this rule to avoid similar situations in the future. We leave to the bankruptcy court's discretion whether to factor this into the damages calculation.

We AFFIRM in part and REVERSE in part the judgment of the district court and REMAND to the bankruptcy court for further proceedings consistent with this opinion.